Baltimore and Ohio Southwestern Railway Company *v.* Ragsdale.

Filed February 19, 1896.

---

No. 1,856.

THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY *v.* RAGSDALE.

APPELLATE PROCEDURE.—*Sustaining Demurrer to Special Answer.*— *Railroad.*—*Shipping.*—The sustaining of a demurrer to the paragraph of an answer in an action for injuries to property during shipment, in which the complaint declares upon the common law liability, setting up a special contract of shipment, is not reversible error, where a general denial is pleaded in another paragraph.

COMMON CARRIER.—*Contract.*—*Liability for Goods Shipped.*—*Negligence.*—A common carrier in this State cannot, by contract, relieve himself from liability for goods shipped, growing out of its own negligence or tortious conduct, or that of its agents or servants.

SAME. — *Contract of Shipment.* — *Time of Presenting Claim for Damages.*—A common carrier may lawfully stipulate that any claim for damages to property shipped, growing out of its negligence, shall be made within ten days or within any other reasonable time.

PLEADING.—*Answer.*—*Common Carrier.*—*Limitation on Liability.* —*Demurrer.*—A paragraph of an answer in an action for damages to property during shipment is demurrable in so far as it attempts to plead a contract limitation upon the amount of the carrier's liability, as an answer to the whole complaint and to defeat recovery entirely, unless it avers that the property injured was of no value.

EVIDENCE.—*Common Carrier.*—*Special Contract.*—It may be shown that a shipment was under a special contract, under a general denial of a complaint, in an action for damages to the property shipped, declaring upon an implied contract or common law liability.

Baltimore and Ohio Southwestern Railway Company v. Ragsdale.

SAME.—*Variance.*—*Proof of Special Contract.*—*Action on Implied Contract.*—Proof of a special contract in an action for damages to property during shipment is a fatal variance from an averment of an implied contract or common law liability.
Dissenting opinion by Ross, J.

From the Lawrence Circuit Court.

*R. N. Palmer* and *Gardiner & Gardiner*, for appellant.

*Matson & Giles*, for appellee.

LOTZ, J.—The appellee shipped three horses over the appellant's railway, extending from Lawrence to Osgood, within the State of Indiana.  One of the horses was injured in transit.  This action was brought to recover the damages sustained.

The first paragraph of complaint avers that the defendant undertook to carry certain horses belonging to the plaintiff, of the value of $5,000; that the plaintiff agreed to deliver the horses at Osgood in good and safe condition; but that in shipping the horses the defendant, by its agents and servants, carelessly and negligently ran an engine and train of cars against the car in which the horses were being shipped, with such force and violence, that one of the horses was thrown upon the floor of the car, thereby wounding and forever disabling such horse, to the plaintiff's damage in the sum of $1,500.

The second paragraph alleges that the plaintiff shipped the horses over defendant's road and agreed to and did pay a freight charge therefor, in consideration of which the defendant undertook to safely carry the horse from Bedford to Osgood; that the defendant did not safely carry said horses, but permitted one of them to become crippled and disabled while in transit,

all without the fault of the plaintiff and to his damage in $1,500.

The appellant insists that the first paragraph is bad because it does not aver that the particular horse injured was of any value, and that the second is bad because it does not aver that any of the horses were of any value.

Each paragraph, however, does aver that a horse was injured, and that the plaintiff sustained damages on account thereof in the sum of $1,500. The word "damages," as here used, imports a pecuniary loss. To say that damages flow from an injury done to specific property, implies that the property injured is valuable. The objections are not well taken.

The appellant filed an answer in two paragraphs. The first was a general denial. The second averred, in substance, that the horses were shipped in pursuance of a special written contract or bill of lading duly executed between the plaintiff and defendant, in which it was stipulated, among other things, "that said company shall in no case be liable to answer for damages on account of accident, delay, loss or injuries to said stock, unless such accident, delay, loss or injuries shall have been caused by the gross and wanton negligence of said company's agents or servants;" and that in consideration of certain risks, duties and liabilities assumed by the shipper, the defendant would ship the stock at greatly reduced rates, of which plaintiff elected to avail himself; and, it was further stipulated, "that in case of any loss or damage on its line for which the party of the first part may be responsible under this contract, such responsibility shall be and is hereby limited to $100, for each horse, mule, or jack. * , * * * Said sums are agreed upon as a maximum valuation of the stock shipped; but in no case shall this company be lia-

ble for a greater amount than the actual value of the animal at the time and place of shipment; and all loss and damage which may occur to said stock from whatever cause, for which claim is not made in writing within ten days and before said stock is mingled with others, to the general freight agent of the party of the first part, is hereby released and forever discharged; and no action on this contract, or to recover damages on account of delay or loss or injuries to said stock, shall be brought after six months from the date."

It is further averred that no claim in writing was made within ten days, nor at any time. The pleading concludes by asking that the plaintiff take nothing and that the defendant recover his costs.

A demurrer for want of facts was sustained to this paragraph, and this is one of the errors assigned.

It is the law in this State, that a common carrier cannot, by contract, screen himself from liability growing out of his own negligent or tortious conduct, or that of his agents or servants. Such contracts are against public policy, for if permitted they might put an end to all liability and encourage carelessness. *Ohio & Miss. R. W. Co.* v. *Selby*, 47 Ind. 471; Wood Railroads, 1885.

Nor can the carrier, in such cases, limit the amount of the recovery. *Railway Co.* v. *Wynn*, 88 Tenn. 320. Although he may agree with the shipper beforehand upon the value of the property, which value shall be conclusive as to the carrier's liability in case the goods are lost. *Hart* v. *Pennsylvania Co.*, 112 U. S. 331.

In the case last cited the bill of lading contained this stipulation: "on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses or mules, not exceeding $200 each, etc."

There are also cases which hold that, if the bill of

lading contain a provision fairly entered into, limiting the carrier's liability at a given sum for each of several animals, and such limitation is based upon a reduction in the charge made for the transportation, such limitation is valid, although the actual value of each animal is much larger and the loss is the result of the carrier's negligence. *St. Louis, etc., R. W. Co.* v. *Weakly*, 50 Ark. 397 ; *Squire* v. *N. Y. Cent. R. R. Co.*, 98 Mass. 239 ; *Richmond, etc., R. R. Co.* v. *Payne*, 86 Va. 481 (6 L. R. A. 849). Whether or not this rule prevails in this State it is unnecessary for us to determine in the decision of this case.

The carrier may also lawfully stipulate that any claim for damages growing out of the carrier's negligence shall be made within a reasonable time ; and ten days has been held to be a reasonable time. *Case* v. *Cleveland, etc., R. W. Co.*, 11 Ind. App. 517.

The paragraph of answer under consideration states a good defense, in so far as it pleads a special contract in bar of the implied or common law liability declared on in the complaint, and this rule applies to each stipulation and its breach. It is also good in so far as it pleads that no claim in writing was made within ten days. But in so far as it attempts to plead a limitation upon the liability of $100, it is insufficient, for it purports to answer the whole complaint and to defeat a recovery entirely. It is not averred that the horse injured was of no value. A full defense founded upon this clause of the contract cannot be good, unless it avers that the property injured was of no value, for it admits a partial liability.

Conceding that the paragraph was sufficient, was it reversible error to sustain a demurrer to it?

The complaint declares upon the common law liability. It did not declare upon the special contract, the bill of

lading.  It seems to be settled by the decisions in this State, that if the shipper declares upon an implied contract, or the common law liability, and it appears that the shipment was made in pursuance of a special contract or bill of lading, he must fail.  The moment it appears that the contract is a special one, and was not an implied one, there is a fatal variance, and it would be the duty of the court to instruct or find for the defendant.  *Indianapolis, etc., R. W. Co.* v. *Forsythe*, 4 Ind. App. 326 ; *Hall* v. *Pennsylvania Co.*, 90 Ind. 459.

The defendant may show, under the general denial, that it is not liable upon an implied contract, but that the obligation arose out of a special contract.  It was so expressly ruled by this court in *Crum* v. *Yundt*, 12 Ind. App. 308.

The action was not on the special contract.  Was it therefore necessary to answer this breach specially?  If so, then it was reversible error to sustain the demurrer.  But, as we have seen, a special contract of itself defeats the action without more.  The ten day limitation is a special contract, the release from liability is a special contract.  The moment it was made to appear that there was a special contract the plaintiff would have been defeated without reference as to whether he had complied with these stipulations.  It was not necessary therefore to specially plead these stipulations and their breach in order that the defendant might avail itself of this defense.  It could be given under the general denial.  The second paragraph did not contain anything but what might have been given under the general denial.  It was not reversible error to sustain the demurrer to it.  The appellant was not harmed thereby, for it could have made the same proof under another paragraph.

The record does not contain the evidence in full, only

the brief notes made by the presiding judge are embodied in it.    It does not appear from this evidence that any special contract or bill of lading was given in evidence.    There being a failure to show a special contract, the recovery must be presumed to have been upon the common law liability.

Several objections are made to the special findings of the court, but the findings are sufficient to support a judgment upon the common law liability.

We find no reversible error in the record.

Judgment affirmed.

Filed February 19, 1896.

### DISSENTING OPINION.

Ross, J.—The appellee, in his complaint, seeks to recover damages from the appellant for a breach of its common law duty as a common carrier for hire, in the transportation of a horse.

The appellant, in addition to an answer of general denial, filed a special answer as follows:

The defendant further answering, and each paragraph thereof, says:    That on the 27th day of July, 1894, the plaintiff did ship by the defendant's road  three certain horses, from the station at Bedford, Indiana, to Osgood, Indiana, a station on defendant's line in Ripley county, Indiana; that the plaintiff and defendant entered into a written contract at the time the said three horses were shipped from Bedford, Indiana, to Osgood, Indiana, where, by the terms of said contract, the plaintiff in consideration of the reduced rates for shipping the said three horses, the plaintiff agreed that the defendant, in no case, should be liable to answer in damages for or on account of accident, delay, loss or injury to the said stock, a copy of the said contract is filed herewith, and made a part of the answer, and marked exhibit "A."

"EXHIBIT 'A.'

"OHIO AND MISSISSIPPI RAILWAY.

"LIVE STOCK CONTRACT.

"Bedford, Indiana, Station, July 27th, A. D. 1894.

"It is hereby agreed by and between the Ohio and Mississippi Railway Company, party of the first part, and William Ragsdale, party of the second part, that the party of the first part will carry live stock without limiting its liabilities, by contract, and that, where certain risks, duties and liabilities are assumed by the shippers, as hereinafter specified, it will forward the same at greatly reduced rates, and guarantee that the freight thereon from the point of shipment to the point of destination shall not exceed the rate of $16.00 per car.

"It is further agreed, that in this instance the party of second part elects to avail himself of the reduced rates, and has delivered on the cars of the party of the first part the following described live stock, to-wit:

| Consignee and Destination. | Description of Stock. | Car Numbers. |
|---|---|---|
| "WM. RAGSDALE, | 3 Horses. | (11,897) |
| " Osgood, Indiana. | | (B. & C.) |

"Charges $—— Paid $16.00.

"And in consideration of the same being shipped at said reduced rates, and of said guaranty, it is further agreed:

"First.   That the party of the first part shall transport said stock over the line of its railway to its destination, if the same be on its line of railway, to be there delivered to the consignee or his order; or if the point of destination be beyond the line of its railway, with some carrier whose line forms a part of the route to destination, it being expressly understood and agreed

that the liability of this railway shall cease when said property shall be delivered by this company to such connecting carrier.

"Second.    The party of the second part agrees that said company shall in no case be liable to answer for damages on account of accident, delay, loss or injuries to said stock, unless such accident, delay, loss or injuries shall have been caused by the gross and wanton negligence of said company's agents or servants.

"Third.    Said company agrees, if the shipment consists of one or more cars of stock belonging to one owner, to carry free on the train with said stock, to take care of the same, the persons named, not to exceed one man for one car or more, two men for four cars or more, and three men for eight cars or more, no person shall be so carried except the owner or his employe or employes, who shall have first his or their name or names in ink, on this contract, and on a duplicate hereof, at the place indicated therefor, and in the presence of the agent by whom this agreement is signed.    And it is understood that said owner, his employe or employes, so signing this contract, shall be carried at their own risk of personal injury, except when caused by the gross negligence or wilful misconduct of the party of the first part, in forwarding the train with said stock, this contract entitling them to ride on such train only.

"And the party of the second part so shipping one or more cars of stock as aforesaid, agrees that he will load and unload the same at his own risk and expense, take the entire care and control of it on the trip, feed and water it at his own risk and expense, in case of delay from any cause whatever, and at proper intervals on the route, see that the cars are in good condition, properly loaded, and securely fastened, and that he does and will assume all risk, and agrees that the party of the

first part shall not be held responsible for any loss or damage which may occur in loading, forwarding or unloading said stock, either from overloading, heat, suffocation, disease, weakness, getting down, or injured or killed in the cars, viciousness, injuring or killing each other, want of care, food or water, remaining too long in the cars, escapes from any cause, delays caused by fire, storm, obstruction of track, broken rails, failure of machinery or cars, want of feed, or any other cause incident to railroad transportation, except fraud or gross negligence in forwarding the particular cars in which said stock is loaded.

"And if such owner or his employe or employes, being entitled to accompany the stock, fail to do so, the shipment shall be in all respects, at the owner's risk in the same manner as if he or they had accompanied it. And if in such case, after signing this contract, the owner, his employe or employes, abandon the stock, either before or after it has left the station, without first giving notice in writing to the agent signing this contract of their intention to do so, said owner will be charged and agrees to pay first class rates per hundred pounds on the shipment, such extra charge in no respect to affect or alter the terms and conditions of this contract. But in no case shall this company be obliged to carry one or more cars of horses or mules unless the same are accompanied by the owner, his employe or employes.

" Fourth.   This company does not agree to transport live stock by any particular train, within any specified time, nor in time for any particular market; nor is it to be responsible for any loss or damage occurring by refusal, failure or inability of a connecting line to receive and forward the stock after tender of delivery. Actual delivery to this company shall not commence until the stock is placed in the car, and its responsibility

shall cease upon the delivery of the car at the station to which consigned. And it is further agreed that the consignor and consignee shall load and unload the stock, and if a whole car be used, the owner shall first examine it, and if he accepts it, this company shall not be held liable for any loss or damage occasioned by defects in its construction or condition.

"Fifth. It is further agreed that in case of any loss or damage on its line for which the party of the first part may be responsible under this contract, such responsibility shall be, and is hereby limited to $100 for each horse, mule, stallion or jack; $75.00 for each cow, steer or bull; $15.00 for each fat hog or fat calf, and $5.00 for each sheep, lamb, stock-hog or stock-calf, and if a full car of stock be shipped, the total responsibility of the company for the same is limited to $1,200. Said sums are agreed upon as a maximum valuation of the stock shipped. But in no case shall this company be liable for a greater amount than the actual value of the animal at the time and place of shipment. And all loss and damage which may occur to said stock from whatever cause, for which claim is not made in writing within ten days, and before said stock is mingled with each other, to the general freight agent of the party of the first part, is hereby released and forever discharged; and no action on this contract, or to recover damages on account of delay, or loss, or injuries to said stock, shall be brought after six months from this date.

"The party of the second part further agrees that he fully understands and assents to the terms of this contract, and that the same shall apply to each and every one of the carriers in the route to destination.

"In witness whereof the parties hereunto set their

hands and seals in duplicate, the day and year above written.

"THE OHIO AND MISSISSIPPI RAILWAY CO.,
"BY C. M. AGNEW,        [SEAL.]
"Agent for O. & M. Ry. Co.
"WM. RAGSDALE,        [SEAL.]
"Owner and Shipper."

And it was further stipulated and agreed by the terms of this said contract, that in case of any loss or damage on its line, for which the defendant would be liable or responsible, such responsibility shall be limited to $100 for each horse, mule or stallion, and defendant says that it did carry and deliver the said horses to the point of destination in a good and safe condition, by and under the terms of its said written contract with plaintiff made and entered into on the 27th day of July, 1894, hereinbefore mentioned.

And defendant further says that by the terms of the said written contract, it was stipulated and agreed that for all loss or damages to the stock from whatsoever cause, for which claim was not made in writing within ten days, and before the stock was mingled with other, to the general freight agent of the company, the defendant should be and is forever released and discharged from liability, and defendant says that no claim in writing was made to the general freight agent of the company of defendant within ten days from the time of the alleged injury to the said horse, nor has any claim of any kind ever been made in writing to the general freight agent of the defendant company. And defendant says that the horse mentioned in plaintiff's complaint, is one of the three horses mentioned and set out in the written contract herewith.

And the defendant says that in writing the said con-
VOL. 14—27

tract on the 27th day of July, 1894, there was a mutual mistake occurred at the time of writing the same, that the contract was made between the plaintiff and defendant, but that in writing the same out, and reducing the same to writing, the agent of this company inadvertently and by mistake omitted to erase the words Ohio and Mississippi from said contract, and insert the words Baltimore and Ohio Southwestern; that it was the intention of the parties to insert "Baltimore and Ohio Southwestern," but by mutual mistake they were omitted, and defendant asks the mistake in said contract be corrected, and that said contract be made to conform to the intention of the parties, and be made to read Baltimore and Ohio Southwestern, wherever the same now reads "Ohio and Mississippi."

And defendant says that the Ohio and Mississippi Railway had but recently been consolidated with the defendant's road under the name and style of the Baltimore and Ohio Southwestern Railway Co., and that the agent of defendant at Bedford, Indiana, in writing and signing the name to the said contract, through force of habit and by mistake, allowed the name of Ohio and Mississippi Railway Company to remain to said contract and signed the same as the Ohio and Mississippi Railway Company, when he intended to, and did intend at the time to, but by mistake and force of habit did put the said Ohio and Mississippi Railway Company's name instead of the name of defendant as was intended; that at the time said contract was executed there was no Ohio and Mississippi Railway Company in Lawrence county, nor in the State of Indiana, the said company having been consolidated with the defendant company, prior to the signing of the said contract; that said contract is the contract of the plaintiff and defendant made by them at the time the said horse was so shipped as set

out in complaint, and is the contract upon which, and by virtue of which said horse was so shipped by the plaintiff on defendant's road, and was treated by the plaintiff and defendant as the contract, and acted upon as the contract between them, and the plaintiff accepted the same as the contract, and paid thereon all that was due this defendant, to-wit: the sum of $16.00, and accepted the same as the contract between the plaintiff and defendant and acted upon the same, and did ship his stock upon the same, and paid money upon the same. Wherefore, defendant says that the plaintiff should take nothing, and defendant asks judgment for costs, and that the plaintiff be estopped from prosecuting this action further, and that the costs herein be taxed to the plaintiff.

To this answer a demurrer for want of facts was sustained.

The majority of the court, while admitting that the answer states a good defense to plaintiff's cause of action, hold that the error in sustaining the demurrer thereto was harmless, upon the theory that appellant could have proven the defense thus pleaded under its answer of general denial.

It is so well settled that it seems hardly necessary to cite authorities, that if a shipper sue a common carrier for the breach of its common law duty, and the evidence disclose that the freight was accepted and carried under a special contract, he cannot recover. *Indianapolis, etc., R. W. Co.* v. *Forsythe,* 4 Ind. App. 326; *Lake Shore, etc., R. W. Co.* v. *Bennett,* 89 Ind. 457; *Hall, Exr.,* v. *Pennsylvania Co.,* 90 Ind. 459; *Bartlett* v. *Pittsburgh, etc., R. W. Co.,* 94 Ind. 281.

It may be conceded that it is usually the rule that under a general denial the defendant may prove any fact that negatives the allegations of the plaintiff's com-

plaint.   When that is true, if the defendant pleads specially any defense which he is entitled to prove under the general denial also pleaded, it will be harmless error to sustain a demurrer to such special answer.

"An answer of general denial controverts the material allegations of the complaint or the paragraph thereof, to which the answer is addressed.  If a fact constituting a defense would tend to negative a material allegation of the complaint, it need not be specially pleaded ; otherwise it is new matter, and should be pleaded specially." *Pittsburgh, etc., R. W. Co.* v. *Racer*, 5 Ind. App. 209.

Under the allegations of his complaint the appellee was entitled to recover when he had proven that the appellant had accepted his horses to be shipped from Bedford to Osgood, that they were in good condition when delivered to appellant aboard its car, and that upon their arrival at Osgood one was injured, showing the extent of injury and depreciation of its value on account thereof.   This would establish the appellant's liability as a carrier under an implied contract, such as the law imputes when no special contract of carriage is entered into, and under which the law imposes certain defined duties, among which is the duty to carry safely. Having declared upon the violation of a duty of the appellant as a common carrier, proof that the stock was accepted and shipped under a special contract would be to negative the fact that it was accepted and shipped under an implied contract. .  But proof that appellee had released his claim would not be a negation of any material allegation of the complaint any more than in a suit to foreclose a mortgage  proof that the plaintiff had released his mortgage, or in a suit on a note proof that it had been paid, would be a denial of their execution.

"Under a mere denial of any allegation, no evidence

shall be introduced which does not tend to negative what the party making the allegation is bound to prove." Section 377, R. S. 1881 (section 380, Burns R. S. 1894.)

And the Supreme Court in *Pfaffenberger* v. *Platter*, 98 Ind. 121, referring to the above section of the statute says: "This court in construing the provision of the statute above cited, and similar provisions in former statutes, has often held that every fact which goes to defeat the cause of action, and which the plaintiff is not bound to prove in order to make out his case, must be alleged in the answer. *Baker* v. *Kistler*, 13 Ind. 63; *Hubler* v. *Pullen*, 9 Ind. 273; *Adams Express Co.* v. *Darnell*, 31 Ind. 20; *Louisville, etc., R. R. Co.* v. *Orr*, 84 Ind. 50; *Hill* v. *Hagaman*, 84 Ind. 287."

In the case of the *Western Union Tel. Co.* v. *Scircle*, 103 Ind. 227, the appellee sued to recover for a failure to deliver a message promptly. He recovered judgment in the court below, and upon appeal one of the specifications of error assigned called in question the ruling on appellant's motion for a new trial. In considering this question the court says: "It is contended that the finding of the trial court is wrong upon the evidence, for the reason that it appears that the claim was not presented within the time limited by the contract, and we are referred to the cases of *Western Union Tel. Co.* v. *Jones*, 95 Ind. 228 (48 Am. R. 713); *Western Union Tel. Co.* v. *Pendleton, supra; Western Union Tel. Co.* v. *McKinney*, 5 Texas L. Review 173; *Western Union Tel. Co.* v. *Pells*, 2 Texas L. Review 276; *Young* v. *Western Union Tel. Co.*, 65 N. Y. 163, and *Heimann* v. *Western Union Tel. Co.*, 57 Wis. 562. We do not question the soundness of the general doctrine that a rule of a telegraph corporation making a reasonable regulation as to the time within which claims

shall be presented is valid, but we do not believe that the rule can avail in an action to recover a statutory penalty, unless the defense is specially pleaded. A defense founded upon a corporate rule limiting the time within which claims shall be presented is· an affirmative defense, and not available under the general denial. Where an actión is founded on a statute, all the facts that a plaintiff need allege or prove are such as bring .the case within the statute, and where a defendant relies upon a defense which confesses and avoids the case made by the complaint, he must plead it specially. It would be a plain violation of the letter and spirit of our code to permit such a defense as that now urged to be made available under the general denial, and it would also be in open hostility to a long line of decisions. As there was no affirmative answer in this case, the defense that the appellant here urges is unavailing." *Western Union Tel. Co.* v. *Trumbull*, 1 Ind. App. 121.

In the case of *Pittsburgh, etc., R. W. Co.* v. *Racer*, *supra*, the second paragraph of the complaint declared upon the railroad company's violation of a duty it owed as a common carrier, namely, to carry without unnecessary delay, and not upon a special contract. To this paragraph of the complaint, the company answered that it had sufficient equipment to carry all stock that was ordinarily offered for transportation, but that at the time complained of, there was an unusual demand for cars, and on that account it was not able to furnish cars and ship the appellant's stock as soon after demand for cars as was its custom, but that it did furnish the cars and transport the stock as soon as it was able to do so, not interfering with the rights of others at other places, who had demanded cars and offered their stock for shipment before the appellant had. In the court below a demurrer was sustained to this answer and on appeal

this court held that the ruling was erroneous, although the appellant had in an answer of general denial which required the appellee under the allegations of his complaint to prove unnecessary delay in transporting the stock.

All of my colleagues who concur in the prevailing opinion agree, I believe, that the second paragraph of appellant's answer is good, in that it sets up a waiver by appellee of his right of action because he made no claim therefor in writing in ten days after the horse was injured, the only difference between us being that they think the error in sustaining the demurrer thereto was harmless, because the appellant already had in an answer of general denial, while I think the error harmful because the defense pleaded specially was not admissible under the general denial.

In *Case* v. *Cleveland, etc., R. W. Co.*, 11 Ind. App. 517, the plaintiff (appellant) sued the defendant (appellee) upon a special contract of carriage, in which appellant agreed that if any injury or loss occurred to the stock in transportation, the appellee should not be liable therefor, unless he presented to it a claim therefor within ten days from the time of the removal of the stock from the car, and the court held that the agreement on appellant's part to present a claim to appellee within ten days from the time he removed his stock from the car or waive his right therefor, was not only reasonable, but that in a suit upon the special contract of carriage he must prove, before he would be entitled to recover, that he had presented to the company his claim within the time specified in the contract; that the presenting of the claim, within the time specified, was a condition precedent to his right to recover.

After referring to the rule established in this State, that when the action is based upon the contract of

affreightment or special contract, the plaintiff must allege and prove a compliance with its conditions, the court in that case, continuing, says: "In many of the States, the procedure seems different from ours, the suits being brought simply upon the general common carrier's liability, the company then setting up the special contract with its limitations and conditions."

Neither do I concur in holding that a common carrier cannot by special contract limit the amount of recovery in negligence cases.    The case of *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, cited in the majority opinion, settles the question adversely to the views of my colleagues.    In that case the plaintiff sued the railroad company to recover damages for injuries to a number of horses carried by it over its railroad under a special contract, in which it was provided that the company assumed a liability "on each horse, not exceeding $200." The suit was to recover on account of the company's negligence, and the evidence disclosed that its negligence caused the injury.    On the trial the plaintiff sought to prove that the horses were all valuable race horses, and by the loss of one which was killed, and the injury to the others he was damaged in the sum of $25,000.    The testimony was excluded, and a verdict and judgment rendered upon the basis of the limitation in value as contained in the contract of affreightment. The plaintiff appealed, contending that the valuation in the contract of shipment was no limitation to his right to recover for any injury to his property which was the result of the company's negligence, upon the theory that the carrier is "forbidden, by public policy, to fix a limit for its liability for a loss by negligence at any amount less than the actual loss by such negligence."    But the court, by Justice Blatchford says: "This qualification of the liability of the carrier is

Baltimore and Ohio Southwestern Railway Company v. Ragsdale.

reasonable, and is as important as the rule which it qualifies. There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage, if there is no loss; and the effect of disregarding the agreement after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract.

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value for the purposes of the contract of transportation between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing, and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the

benefit of the contract if there is no loss, and to repudiate it in case of loss."

This seems to be the well settled rule. *Louisville, etc., R. R. Co.* v. *Sherrod,* 84 Ala. 178 ; *St. Louis, etc., R. R. Co.* v. *Weakly, supra,* (35 Am. and Eng. R. R. Cas. 635); *Duntley* v. *Boston, etc., R. R. Co.,* 20 Atl. Rep. 327 (9 L. R. A. 449); *Hill* v. *Boston, etc., R. R. Co.,* 144 Mass. 284; *Western R. W.* v. *Harwell,* Ala. (45 Am. and Eng. R. R. Cas. 358); *Johnstone* v. *Richmond, etc., R. R. Co.,* (S. C.) (55 Am. and Eng. R. R. Cas. 346); *Zimmer* v. *New York Cent., etc., R. R. Co.,* 137 N. Y. 460; *Louisville, etc., R. R. Co.* v. *Sowell,* Tenn. (49 Am. and Eng. R. R. Cas. 166); *Zouch* v. *Chesapeake, etc., R. R. Co.,* (W. Va.) (49 Am. and Eng. R. R. Cas. 702); *Richmond, etc., R. R. Co.* v. *Payne,* (Va.) (42 Am. and Eng. R. R. Cas. 366) (6 L. R. A. 849).

Although expressions are to be found in a number of the opinions of the courts of some of the States that the law will not tolerate that a carrier shall stipulate, by special contract, for exemption from liability when the loss or injury is the result of its negligence, a distinction should be made between contracts exempting from liability and those where the liability is not sought to be abrogated but merely limited in consideration of a reduced rate of freight. For as said by the court in *Hart* v. *Pennsylvania Co., supra,* "*The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care.*" On the contrary, if the shipper by a false valuation has induced the carrier to give him a lower rate for the carriage of his property, public policy forbids that he should, in case it is destroyed or injured, in transportation, be permitted to prove a greater value. For a court to permit such a thing, is simply to lend its all powerful aid in

the consummation of a known fraud.    For to permit the shipper to thus impose upon the carrier is not only repugnant to all the principles of honesty and fair dealing, and contrary to the right guaranteed of freedom of contracting, but encourages deception and fraud.

The judgment of the court below should be reversed, with instructions to overrule the demurrer to the second paragraph of appellant's answer.

