[No. 8121.  Department One.  January 17, 1910.]

## HERMAN BARTELT, *Respondent*, v. OREGON RAILROAD & NAVIGATION COMPANY, *Appellant*.[1]

CARRIERS—OF LIVE STOCK—NEGLIGENCE—BURDEN OF PROOF.  Where the shipper of live stock accompanies the same, the burden is upon him to prove negligence in transit resulting in injury to the stock.

SAME—CONTRACT—CONDITIONS—EXEMPTION FROM LIABILITY.  The agreement of a shipper of live stock to unload, load, feed, water and care for the stock in transit, is binding upon him, but does not exempt the carrier from liability for any negligent act in transporting the stock; nor could it do so by contract.

SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  There is sufficient evidence of negligence in the operation of a train, and that the same resulted in injury to live stock shipped thereon, where it appears that two car loads of young mares were properly loaded, the number in each car was consistent with proper handling, that they were unloaded and fed and reloaded in good condition at U., after which the cars were chugged and jammed nearly all the way, the conductor stating that the engine was overloaded, that the cars were jammed in switching, horses being thrown to the floor, and at the end of the journey one of them was found to have a dislocated shoulder, another a dislocated hip, and two had slipped their foals; although the evidence as to the rough handling of the train was conflicting.

SAME—NEGLIGENCE—EVIDENCE.  The carrier of live stock accepting mares for shipment is chargeable with notice that they are heavy in foal.

PLEADING—VARIANCE—WAIVER—CARRIERS.  It is not a fatal variance that the pleading alleged an implied contract to carry and deliver live stock as at common law, and the proof showed a special contract by bill of lading, where the proof was admitted without objection.

CARRIERS—OF LIVE STOCK—ACTION FOR NEGLIGENCE—FORM—PLEADING—IMMATERIAL VARIANCE.  A common law action against a carrier of live stock for negligent acts in the operation of the train resulting in injury to the stock is maintainable irrespective of the special contract of carriage; so that a variance as to the contract would be immaterial where the issue raised and tried was as to the negligence of the company in operating the train.

[1]Reported in 106 Pac. 487.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 23, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action of tort.   Affirmed.

*W. W. Cotton, Samuel R. Stern,* and *W. A. Robbins,* for appellant.

*John L. Dirks,* for respondent.

Gose, J.—This is a suit to recover damages from a common carrier for injuries to live stock, resulting from its alleged negligence.   The dereliction charged is that the appellant, in violation of its duty as a common carrier, so negligently and carelessly operated its cars that certain brood mares were bruised, injured, and maimed, while being transported over its road, in the month of November, 1907. The appellant joined issue upon the charge of negligence, and alleged affirmatively that it transported two carloads of vicious, wild, and unruly horses for the respondent, from Huntington, Oregon, to Fairfield, Washington, upon the terms of a limited liability live stock contract and at a reduced rate, the material stipulations of the contract being:

"In consideration of the special reduced rate herein provided for the transportation of the live stock above described, it is hereby stipulated and agreed as follows: . . .

"(3)   The shipper agrees to load, unload and reload all said stock at his own expense and risk, and to feed, water and tend the same at his own expense and risk while it is in any stock yards, whether the same be operated, owned, or controlled by said carriers, or otherwise, and while in the cars or at feeding points or at any place where the same may be unloaded for any purpose whatever.

"(4)   The shipper assumes . . . all risk of injury which said live stock or any of them may receive in consequence of any of them being wild, unruly, weak, maiming each other, or themselves by or in consequence of heat or suffocation or any other ill effects of being crowded or injured. . . .

"(7)   No carrier shall be liable for any loss or damage to said stock by causes beyond its control. . . ."

2—57 WASH.

The reply denied that the horses were wild, vicious, or unruly, and denied that they were carried at a reduced rate. Upon the issues thus joined, the case was submitted to a jury, resulting in a verdict and judgment for the plaintiff, from which the defendant has appealed.

It is first urged that there is no evidence tending to show that the horses were injured through the appellant's negligence while in transit, and that the cause of the injury is speculative and conjectural. The respondent's agent accompanied the horses, and the burden was therefore on the respondent to prove that the injury occurred through the negligence of the appellant, and that it did not arise from a failure upon his part to perform the duties assumed by him in the contract of shipment. The obligation which he assumed, to load, unload, and water the stock and to care for them while in the stockyards, was legal and binding upon him. The appellant could not, however, exempt itself from liability for any negligent act in transporting the horses, nor did it undertake to do so. These propositions are well settled. *Lewis v. Pennsylvania R. Co.*, 70 N. J. L. 132, 56 Atl. 128; *Terre Haute etc. R. Co. v. Sherwood*, 132 Ind. 129, 31 N. E. 781, 32 Am. St. 239, 17 L. R. A. 339; *Pennsylvania R. Co. v. Raiordon*, 119 Pa. St. 577, 13 Atl. 324, 4 Am. St. 670; *Normile v. Oregon Nav. Co.*, 41 Ore. 177, 69 Pac. 928; *Baltimore etc R. Co. v. Ragsdale*, 14 Ind. App. 406, 42 N. E. 1106; 5 Am. & Eng. Ency. Law (2d ed.), 308; *Hance v. Pacific Express Co.*, 66 Mo. App. 486; *St. Louis etc. R. Co. v. Wells*, 81 Ark. 469, 99 S. W. 534; *Peterson v. Chicago M. & St. P. R. Co.*, 19 S. D. 122, 102 N. W. 595. The court's instructions were in harmony with this view of the law. In holding that the burden is on the respondent to prove that the injury resulted from the negligence of the appellant, we do not intend to modify the rule expressed in *Jolliffe v. Northern Pac. R. Co.*, 52 Wash. 433, 100 Pac. 977, where the injury to the live stock resulted from an unusual delay in the

shipment on the part of the carrier, when the cause of the delay was known to the carrier and unknown to the shipper.

Respecting the sufficiency of the evidence to support the verdict on the question of the negligence of the appellant, the admitted facts are, that the appellant received from the respondent at Huntington, Oregon, for shipment to Fairfield, Washington, two carloads of horses, consisting of forty-five young, grade Percheron mares, and two saddle horses; that there were twenty-four head in one car and twenty-three head in the other; that from Umatilla to Riparia the train comprised one engine, fifty loaded cars, fourteen empty cars and a caboose; that when the horses were taken from the cars at Fairfield, one had a dislocated shoulder, another a dislocated hip, another a mashed foot, and three of the mares had slipped their foals. Evidence was submitted to the jury which tended to show that the horses were properly loaded and that the number placed in each car, considering the size of the horses, was consistent with prudent handling; that the horses were unloaded and fed at Umatilla and reloaded in good condition; that after leaving that point, along the Snake river, the cars were chugged and jammed, as a witness expressed it "most all the way along;" that the attendant inquired of the conductor the cause of the rough handling of the cars, and the latter informed him that the engine was overloaded, that it had too many cars, causing the engine to slip and the cars to jerk; that at Riparia the train was switched about the yards and jammed against other cars, for a period of about two hours and until the attendant complained of the switching and jamming to the yard master, and demanded that the cars with the horses should be set out; that they were then placed upon a switch and permitted unattended to run against other cars, with such force that two of the horses were thrown to the floor of the car.

The appellant argues, however, that the mares were wild, range-raised, and heavy in foal, and that the injuries were occasioned by their natural propensities. There was evi-

dence tending to show that the mares were barn and pasture raised and gentle, although some of them were unbroken; that the line of the Southern Pacific railroad extended along one side of the inclosure where they had been pastured; that they were accustomed to and were not frightened by trains; that they had been bred late in the season and were not heavy in foal. The testimony as to the rough handling of the train along the river and in the yards at Riparia is conflicting, but there is ample evidence in the record, direct and circumstantial, to justify the jury in concluding that the injury was referable to the negligent operation of the train at both points.

It is further contended that the evidence shows that the mares were heavy in foal, and that in the absence of notice of this fact or of facts sufficient to charge the appellant with notice, this was a hidden defect, and that it can only be held to the exercise of reasonable care. The court instructed the jury that, if the injury resulted from the wild or vicious propensities of the horses or because they were worried, fretted, crowded or maimed themselves, or if the injury resulted from the mares being heavy in foal, there could be no recovery. The appellant was certainly not entitled to a more favorable instruction. Moreover, if the mares were heavy in foal, that fact was apparent to the carrier.

Finally, it is urged that,

"There is a fatal variance between the pleadings and the proof, in that plaintiff's complaint is an attempt to recover on an implied contract to carry and deliver as at common law, and plaintiff's own proof shows that the shipment moved under the terms of the special contract in evidence in this case, and that the alleged damage is within the terms of the special contract."

The bill of lading was admitted in evidence as a part of the cross-examination of one of the respondent's witnesses. At the close of the respondent's case the appellant moved for a nonsuit on two grounds, viz., (1) that there was no evidence tending to show negligence, and (2) that the injury was

due to the inherent vice of the animals.   When all of the
evidence had been submitted, defendant moved for a directed
verdict, renewing the grounds stated in the former motion,
and adding a third, viz., a variance between the pleading and
the proof, in that a recovery was sought on the ground of
common law negligence when the shipment was made under a
written contract.   The evidence was submitted without objec-
tion.   Orderly procedure, as well as the due administration of
justice, forbids that the appellant may proceed throughout
the trial as though the issue were properly joined, and then
seek to raise the question that the action should have been bot-
tomed upon the written contract.   *Asplund v. Mattson*, 15
Wash. 328, 46 Pac. 341; *Murray v. Meade*, 5 Wash. 693, 32
Pac. 780; *Fontenot v. Manuel*, 46 La. Ann. 1373, 16 South.
182; *Prenatt v. Runyon*, 12 Ind. 174.   The contract, as we
have seen, was *prima facie* legal and binding, and if there was
no consideration for it in the way of a reduction in the rate,
or in any other respect, the burden of proving such fact was
on the respondent, and the court so charged the jury.   The
appellant was not, therefore, as it contends, precluded from
raising the question until it had proved a consideration for the
contract.

   But, regardless of the question of waiver, the contract did
not, and for reasons of public policy, could not, exempt the
appellant from liability for its own negligent acts.   If the
injury to the horses occurred from the negligent operation
of the train on which the horses were carried, a liability
arose which was not covered by the contract, and an action
predicated upon such negligence is maintainable.   Our stat-
ute directs that the facts constituting the cause of action shall
be stated in plain and concise language (Rem. & Bal. Code,
§ 258).   The complaint alleges the delivery and acceptance of
the horses for shipment, the negligent operation of the train,
and the resultant injury.   The issue and the method of trial
would have been the same if the pleader had set forth the bill
of lading *in haec verba*.   The code, § 299 (Rem. & Bal.)

provides that no variance between the allegations in the pleading and the proof shall be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Section 300 provides that, when the variance is not material as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs. Section 301 provides that, when the cause of action to which the proof is directed is not proved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance, but a failure of proof. Guided by these principles, it is as clear as the mathematical rules of addition and subtraction that the issue of negligence was clearly and sharply defined, and that no prejudice resulted to the appellant. If injury arose from the appellant's negligence, as the complaint charges, it was liable in damages. If it occurred through the negligent discharge of the duties assumed by the respondent, no cause of action existed. This view is concisely expressed by Justice Wolverton, in *Normile v. Oregon Nav. Co., supra,* at page 181, in the following language:

"It is seldom that bills of lading showing the contractual and correlative relations and obligations of the carrier and shipper relative to the shipment are drafted with a view to changing or restricting all the common-law liabilities to which the carrier is subjected; and if any remain upon which an action may be founded and recovery had without coming in conflict with special limitations and restrictions, there exists no reason why the common-law action may not be maintained, notwithstanding the special contract."

The same rule was announced by the court of appeals for the eighth circuit, speaking through Justice Thayer, in *Southern Pac. Co. v. Arnett,* 111 Fed. 849, 852, where it is said:

"We are aware of no rule of law which requires a shipper who has made a special contract to declare upon it, when he contends that the carrier has been guilty of some neglect of

duty on account of which he is liable notwithstanding the provisions of the contract. A special contract, when exacted by a carrier, is a defensive weapon, to be made use of by the carrier when sued by the shipper for any alleged dereliction of duty against which it was designed to afford protection."

In 6 Cyc. 513, the opinion is expressed that this is the better rule.

We are aware that there are many cases which hold that the action must be brought on the written contract of shipment, but in view of the fact that the question is an open one in this jurisdiction, we have adopted the view which we think best harmonizes with the spirit of the code practice. A reading of the cases which hold the contrary view will, we apprehend, disclose the fact that judges of acknowledged ability have been guided by the old rules of pleading rather than the liberal rules of the reformed procedure.

The judgment will be affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.