MIX, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

(149 N. W. 727.)

1. **Carriers—Shipping of Livestock—Shipping Contract—Negligence —Burden of Proof—Sufficiency of Evidence.**

Under Civ. Code, Sec. 1595, making a common carrier liable for injury to freight from time he accepts it until he relieves himself from liability by delivery, unless consignor accompanies the freight and retains control, held, that a consignor of cattle, who agreed to, and did, accompany the shipment part of the distance, cannot, by showing the good condition of the cattle when delivered to carrier, and their bad condition at destination, cast upon carrier the burden of showing that the loss and injury was not due to its negligence; that, in absence of any evidence as to what caused the loss or injury, negligence can not be imputed to carrier; since, if consignor had carried out his agreement by accompanying the cattle to destination, he would have been able to have known the cause of the injury, and it is as reasonable to suppose the injury may have resulted from natural effects of the journey, or of viciousness of the cattle, as to suppose the carrier negligent. **Held,** further, that the evidence is insufficient to sustain the verdict for plaintiff.

2. **Same—Negligence—Conductor's Release of Shipper From Care of Freight—Shipping Contract—Agency.**

Where a consignor of cattle agreed with carrier to accompany them, proof that the conductor told him, after part of the trip had been made, that it would be all right if he did not accompany the cattle the rest of the distance but would take a passenger train to destination, will not release consignor from his obligation, in absence of proof that the conductor was authorized by carrier to annul the terms of the contract.

3. **Same—Shipment of Livestock—Negligence of Accompanying Shipper—Evidence—Burden of Proof.**

Mere proof of loss of two hogs out of a shipment, will not cast upon carrier the burden of proving an excuse for the

loss, but the consignor, who accompanied the shipment, and took the same care of the stock, and had the same means of knowledge as to cause of the loss, as if he had gone with it under a contract to do so, must first show that his negligence did not cause the injury.

(Opinion filed December 14, 1914.)

Appeal from Circuit Court, McPherson County, Hon. JOSEPH H. BOTTUM, Judge.

Action by Charles Mix against the Chicago, Milwaukee & St. Paul Railway Company, to recover damages for loss of and injury to livestock shipped over defendant railroad. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed and remanded.

*William G. Porter,* and *Ed. L. Grantham,* for Appellant.

*Theo. J. P. Geidt, Stiles & Devaney,* and *C. H. Nichols,* for Respondent.

(1) Under point one of the opinion, Appellant cited: Toledo etc. R. Co. v. Foss, 88 Ill. 551; Reading v. C. B. & Q. Ry. C., (Mo.) 145 S. W. 1166; Peterson v. C. M. & St. P. Ry. Co., 19 S. D. 122; Rodell v. Adams, (Pa.) 80 Atl. 253; McCoy v. Carolina Cent. R. Co. (N. C.) 55 S. E. 270; Elliott v. Carter etc. Co., (Neb.) 73 N. W. 948; DeLamar v. Hendeley, 157 Fed. 547; Yontz v. Mo. Pac. Ry. Co., (Mo.) 160 S. W. 832; Mostelle v. Iowa Cent. Ry. Co., (Ia.) 143 N. W. 748; Hanley v. C. M. & St. P. Ry. Co., (Ia.), 134 N. W. 47; Asa W. Allen Co. v. Mobile etc. Ry. Co., (Miss.) 58 So. 710.

Respondent cited: Moore on Carriers, page 532; Faust v. C. & N. W. Ry. Co., 73 N. W. 623; Hutchinson on Carriers, Vol. 1, page 304; Cole v. Soo Line Ry. Co., 117 Minn. 33; Adams Express Co. v. Croninger, 226 U. S. 491; Hutchinson on Carriers, Vol. 1, page 439.

(3) Under point three of the opinion, Appellant cited: Mostelle v. Iowa Cent. Ry. Co., supra, and cases cited.

Respondent cited: Nelson v. G. N. Ry. Co., 28 Mont. 297; Cole v. Soo Line Ry. Co., 117 Minn. 33.

McCOY, J. Plaintiff, who is respondent here, by his complaint set out two causes of action. By the first he, in substance, alleged that on June 20, 1911, he delivered to appellant three car loads of live stock, consisting of 97 head of cattle and some hogs,

to be shipped by appellant from Eureka, S. D., to South St. Paul, Minn.; that defendant did not transport said stock within a reasonable time, and did not use ordinary care in the handling of said stock, but, on the contrary, so negligently, by suddenly starting and stopping its train, the said stock were, by the kicking and jamming of said cars forward and backward with unnecessary suddenness and violence, thrown from their feet and piled upon one another, thus causing them to become maimed, bruised, and gaunted and crippled; that defendant negligently failed to furnish or provide suitable or fit pen accommodations for the use and resting of said stock in transit, and did not provide suitable food and water; that defendant negligently refused to permit said stock to be unloaded at reasonable times and places, while in transit, for the purposes of rest and water; that by reason of defendant's not transporting said stock properly the same were delayed until the price of cattle declined; and by reason of said stock becoming so maimed, gaunted, bruised, and crippled, their value was depreciated, to plaintiff's damage, etc. By the second cause of action plaintiff alleged that on July 17, 1909, he delivered one car load, consisting of 68 head of hogs, to defendant to be transported to South St. Paul from Eureka, and when said car arrived at its destination there were but 66 hogs contained therein, to plaintiff's damage ,etc. Appellant, the defendant, answered, admitting the transportation of said live stock, and denied any negligence on its part in the transportation, handling, or care thereof, and further alleged that said stock was shipped under a specific agreement between appellant and respondent, which, among others, contained the following provisions: That the company shall not be liable as an insurer of the live stock transported under this agreement; that the company shall not be liable for the acts of the animals to themselves, or to each other, such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals, nor from their jumping from the cars, nor from loading or unloading them; that the company shall not be liable for injury or damage to said stock on account of delay; and it does not agree to deliver said stock at destination at any specified time; that defendant, as a part of said contract, in consideration of the agreement of plaintiff that he would attend to the care and feed and water of said

stock during its transportation, and relieve defendant from all responsibility with reference thereto, transported plaintiff free of charge upon its train, carrying said live stock through its entire distance, and plaintiff thereby, in consideration thereof, relieved defendant from all responsibility with reference to the care, feeding, and watering of said stock. Defendant further alleged that whatever injury occurred to said stock in transportation resulted from the acts of plaintiff as its caretaker. Plaintiff made reply, denying the affirmative matter alleged in the answer, but admitted the shipping contract, and alleged that plaintiff complied with all its terms and conditions on his part to be performed. The trial court withdrew from the jury the consideration of the question of damages for alleged failure on the part of defendant to furnish or provide suitable pen accommodations, feed, and water for said stock during transit, and also withdrew the question of damages alleged to have been cause by delay in transportation. There was a general verdict for plaintiff in the sum of $235. Defendant appeals, assigning as error, among other things, the insufficiency of the evidence to sustain the verdict and judgment.

[1] We are of the opinion that the evidence was insufficient to sustain any verdict for plaintiff. The evidence shows that the ordinary running time between Eureka and South St. Paul is about 20 hours, and also shows that the three car loads of stock mentioned in the first alleged cause of action left Eureka at 4:55 p. m., June 20, 1911; arrived at Aberdeen 12:25 a. m. the 21st; left Aberdeen at 2:30 a. m., should have left at 2 a. m., but were delayed on account of a passenger train; arrived at Montevideo at 1:20 p. m.; stock unloaded at Montevideo, fed and watered; left Montevideo at 9:10 p. m.; arrived at South Minneapolis 5:40 a. m. June 22d; and arrived at South St. Paul 40 minutes later. Plaintiff accompanied this shipment as far as Aberdeen, where he left the stock train and took passage on a passenger train for South St. Paul. Before leaving the stock train plaintiff said to the conductor, "I will take the passenger if it will be all right." The conductor said: "All right You can depend upon it we will be there tomorrow by the time you will be there." Plaintiff testified: "So I went and took the passenger and let my stock follow; paid my fare rather than be

carried." The evidence further tended to show that the cattle looked worn and bruised, and one was crippled, and one, an average heifer, was dead, when they arrived at South St. Paul. They looked as though they had not had anything to eat or drink. The cattle average 475 pounds at Eureka; they were weighed before being placed in the cars. They average 435 pounds when sold; were sold the same day they arrived. In the condition in which they were when loaded at Eureka they were worth about 50 cents per hundredweight more than the condition they were in when received at their destination. There is no testimony whatever tending to show, in any manner, what was the direct or even remote cause of the worn, bruised, and crippled looks of the cattle, or what caused the death of the heifer, or that anything other than natural causes, the results of travel, produced the shrinkage in weight. There were 97 head of cattle and some 54 hogs loaded into three cars; the hogs being mixed in the same three cars with the cattle. The cattle were a mixed lot, designated as stock or feeding cattle, with four bulls in the lot, weighing nearly 1,100 pounds each.

In relation to the second alleged cause of action the plaintiff testified as follows:

"I loaded them myself, went with them to South St. Paul. There were 68 hogs counted into the car. I counted them as they were unloaded; there were 66 head."

There is no testimony in any manner tending to show what became of the two missing hogs.

It is the contention of respondent that, when he introduced testimony showing the number and good condition of the stock when loaded into appellant's cars at Eureka, and testimony showing loss of a portion and an injured condition of the remainder at the time of the receipt thereof at destination, the burden of proof then shifted to appellant to establish that such loss and injury was not due to any negligennce on its part. In Elliott on Railroads, § 1549, the rule is stated as follows:

"The fact that the owner, or his agent, is furnished transportation by the carrier and goes with his cattle or horses to look after them, especially if he has agreed to do so in the contract of carriage, often exerts an important influence in determining the duties and liabilities of the carrier in the particular case. As we

shall hereafter show, it may relieve the carrier from the duty to feed and water and otherwise give particular attention to the stock, but it will not relieve the carrier from the duty to afford the owner reasonable opportunities for so doing. The fact that the owner accompanies the stock and takes charge of it may also be important upon the question of contributory negligence. So, where the owner accompanies the stock, under a special contract to care for them himself, he may well be presumed to be as well acquainted with the facts in regard to their loss or injury as the carrier, and as they may have been injured because of his own negligence, or because of their inherent nature and propensities, and not by any negligence of the carrier, it is but just to require him to show the facts. The rule in such cases, therefore, is that the burden of proof is upon the plaintiff to show that a breach of duty on the part of the carrier caused the injury or loss, and if the carrier is liable only for negligence, the burden is upon the plaintiff to show such negligence."

The following cases also sustain this rule: Terre Haute Ry. v. Sherwood, 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. Rep. 239; Colsh v. C., M. & St. P. Ry., 149 Iowa, 176, 127 N. W. 198, 34 L. R. A. (N. S.) 1018, Ann. Cas. 1912C, 915; Bartlet v. O. R. & N. Co., 57 Wash. 16, 106 Pac. 487, 135 Am. St. Rep. 959; Grieve v. Ill. Cent. Ry., 104 Iowa, 659, 74 N. W. 192; Needy v. Western Ry. Co., 22 Pac. Super. Ct. 494. In Terre Haute Ry. v. Sherwood it was held that the burden of proving negligence is upon the plaintiff in an action against a carrier for the loss of live stock where the owner agrees to take care of the stock during transportation; and in this case, the court, among other things, said:

"The animals were not therefore in the exclusive custody and control of the carrier, so that the case is not within the reason of the rule that the carrier, and not the shipper, has the burden of proof, because the former has all the means of explanation and excuse at hand. Here the shippers, better than the carrier, can explain many things, and these things they do not undertake to explain, nor do they undertake to show that the loss was not attributable to a failure to perform acts they themselves agreed to perform. It may as well be assumed that the fault was that of the plaintiff as that it was the fault of the defendant, for

there are here mutual agreements, mutual duties, and the shipper was placed in charge of the property. In view of the nature of the property to be carried, and of the express undertaking of the shippers to care for it while in transportation, we adjudge that it was incumbent upon the plaintiffs to show * * * that the loss was not attributable to a breach of the contract stipulations on their part."

In St. Louis, I. M. & S. R. Co. v. Weakly, 50 Ark. 415, 8 S. W. 141, 7 Am. St. Rep. 117, the court said:

"Under the contract, they [the shippers] took charge of the stock * * * and relieved appellant of any responsibility for * * * those duties of a common carrier which they undertook, * * * and confined its duties * * * to furnishing suitable cars and hauling them to the place of destination. Having the care of the stock, the liabilities of a common carrier, which make it his duty to account for the loss of freight, did not devolve on appellant. Being in charge, they were presumed to know the cause of the loss of the jack found dead, if either party to the contract does; and the burden * * * is upon them to show that the default or negligence of appellant was the cause, before they can be entitled to recover."

In the case of Needy v. Ry. Co., 22 Pa.. Super. Ct. 489, where plaintiff testified he shipped 82 hogs, and that only 75 arrived at the place of destination, under a contract whereby plaintiff undertook to care for the hogs while being transported. but where plaintiff did not in fact acompany them, it was held that the burden of proof was upon plaintiff to show negligence and that negligence would not be imputed from the mere fact that the full number of hogs did not arrive at the place of destination, and that certain evidence tending to excuse plaintiff from accompanying the shipment was properly rejected for the reason that the rights and duties of the parties relative to that matter were fixed by the agreement. In rendering the opinion, the court, among other things, said:

"Ordinarily, one who delivers goods to a carrier parts entirely with his possession and control over them, and knows nothing of what takes place during the carriage, while the carrier has possession and control over them, and is supposed to know, or have the means of knowing, what happened to them, and if they

are lost or injured, how it occurred. * * * It is not contended that such provisions in a contract with a common carrier are invalid, and it is an admitted fact that the plaintiff wholly omitted to perform his duties under the contract relative to the care of the hogs and the car while being transported. We do not say that the contract had the effect of relieving the defendant from all duty relative to these matters; but we think it clear that the loss cannot be imputed to the negligence of the carrier in the absence of all evidence as to the occasion of the loss, or of the omission of any duty on the part of the carrier, where it is as reasonable to infer that it was attributable to the admitted neglect of the duties devolving upon the shipper."

From these authorities we reach the conclusion that where the shipper accompanies, or by his contract agrees to accompany, a shipment of live stock, and when the alleged loss or injury to such stock is of such a nature that it might as reasonably be inferred that it resulted either from the viciousness of the stock itself or from a failure of the shipper to perform the duties devolving on him under the contract as that it resulted from the negligence of the carrier, the burden of proof is on the shipper to establish by evidence that such loss or injury was not the result of his own negligence in the performance of, or in the failure to perform, those things which he had contracted to perform, or which the law imposed upon him to do, or that such injury was not the result of the viciousness of such animals themselves. We do not wish to be understood as holding that the carrier, under such circumstances, would be relieved from all negligence in relation to the care of such stock, or that in a case where, from the nature of the injury or loss shown, it appeared that it could not be attributable to the viciousness of the animals themselves, nor to a failure of the shipper to perform his part of the contract, that negligence might not be imputed to the carrier by merely showing the good condition of the stock when delivered and the injured condition thereof at destination. But we do hold, under the circumstances of this case, in the absence of any evidence as to what caused the loss or injury, that negligence should not be imputed to the carrier under either alleged cause of action. This seems to be the rule intended to be established by sections 1595-1597, Cic. Code. It is just as reasonable to infer that the injury

to the cattle in question was the result of too many vicious bulls being loaded promiscuously among yearlings and two year olds as it is to infer that any negligence of appellant caused it. It is just as reasonable to infer that the injury to the cattle was the result of respondent's negligently abandoning the care thereof at Aberdeen, instead of being with them at the time when, possibly, they most needed his care, as it is to infer that such injury was the result of appellant's negligent acts.

[2] It is contended by respondent that he was excused from further care of such animals by the conductor of the stock train, but we are of the view that the conductor, as such, had no authority or power to vary or excuse the performance of any of the terms of said contract. Respondent was placed in charge of said property when it started from Eureka, under the terms of a contract, which contract could not be annulled by the act of a conductor without first showing that such conductor was authorized by appellant to do so. Weaver v. Southern Ry. Co., 11 Ga. App. 355, 75 S. E. 447.

[3] The plaintiff, in person, actually accompanied the car of hogs while in transit, mentioned in the second cause of action. Plaintiff testified: "I went with them to South St. Paul." While this expression may be somewhat indefinite, we construe it, for the purpose of this opinion, to mean that he took the same care of this stock and had the same means of knowledge as to the cause of the loss as if he had gone with it under a contract to do so. He was then, under the rule, presumed to better know, or to possess better means of knowledge, as to what occasioned the loss of the two hogs than appellant, and therefore the burden of proof was on him to show by evidence, in the first instance, that said hogs were not lost by reason of his own negligence.

The judgment and order appealed from are reversed and the cause remanded.