[No. 7762.    Decided April 5, 1909.]

N. T. JOLLIFFE, *Appellant,* v. NORTHERN PACIFIC RAILROAD
COMPANY, *Respondent.*[1]

CARRIERS—OF GOODS—DELAY IN SHIPMENT—STIPULATIONS IN CON-
TRACT—NEGLIGENCE OF DEFENDANT—BURDEN OF PROOF—PRESUMPTION
FROM UNUSUAL DELAY. The fact of unusual delay in the shipment
of horses makes a *prima facie* case of negligence against a carrier,
under a contract in which the shipper assumed all risks of delay in
transportation, where it was recognized that the carrier could not
relieve itself from acts of negligence by a further clause exempting
the company from liability except for acts of negligence; since the
cause of the delay is peculiarly a matter within the knowledge of
the defendant and out of the reach of the plaintiff.

SAME—DAMAGES FROM DELAY—EVIDENCE—SUFFICIENCY. In an
action for damages from unusual delay in shipping horses, causing
shrinkage preventing immediate sale, the evidence of the amount
of the damage sustained is sufficiently definite to make a case for
the jury, where it appears that an unusual amount of shrinkage was
caused by the delay, requiring the keeping and feeding of the horses
a longer time than usual before they could be sold, costing at the
rate of $15 per month for care and keep.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered May 27, 1908, upon granting
a nonsuit, after a trial before the court and a jury, in an
action to recover damages from delay in the shipment of
horses. Reversed.

*Sayre & Sutherland,* for appellant.

*Carroll B. Graves,* for respondent.

DUNBAR, J.—On September 27, 1907, the plaintiff shipped
a car load of horses at Grafton, North Dakota, to be trans-
ported over the lines of the Northern Pacific Railway Com-
pany to Seattle, Washington. The shipment reached its
destination on October 13, having been en route about six-
teen days. This action is for damages for injury to the

[1]Reported in 100 Pac. 977.

horses, most of the damages being alleged to have been caused by the delay of the cars, it being conclusively shown that the cars were unduly delayed. It is not necessary to mention specifically the particular delays charged. The shipment was under a written contract, and it is the contention of the plaintiff that the delays, being unreasonable, were due to negligence of the defendant, and that the horses shrunk an unusual amount by reason of these delays, thereby depreciating in value and necessitating their being cared for from one to three months before they were fit to sell. At the close of plaintiff's case, the court granted defendant's motion for a nonsuit, and thereafter overruled plaintiff's motion for a new trial. Judgment was entered and appeal followed.

In the trial of the cause the appellant sought to testify as to the cause of the delay, and what he was informed by the train men was the cause of said delay. This was objected to, and the appellant was only allowed to testify to what he knew of his own knowledge. This is assigned as one of the errors in the case. The main contention in this case is founded on the following statement in respondent's brief, viz.; That a carrier is only bound to use ordinary care and diligence to avoid unreasonable delay, and the fact that there is an unusual delay does not of itself show a breach of duty in showing whether or not there was a negligent delay. The respondent says:

"While it is not contended that a carrier can contract against its own negligence, yet such stipulations as these, in a contract of this character, are upheld except where the attempt is made to contract against negligence; and in order for the shipper to avoid the effect of such a stipulation, the burden is upon him to prove that the act complained of is the negligent act of the carrier. In this case, and under this stipulation, it is not sufficient to show the mere fact of a delay, but the plaintiff must go further and affirmatively show that such delays were caused by the negligence of the carrier. In the absence of a special contract limiting his liability, the carrier must affirmatively show that the loss was occasioned by some cause for which he was not responsible,

but where there is a limited liability contract, and the loss falls within one of the excepted clauses, the burden of proof is upon the shipper to show negligence. The presumption, in the absence of proof to establish negligence, will be that the carrier has done his duty."

This was the theory accepted by the court and the theory upon which the cause was tried. The stipulation referred to in the contract is to the effect that the shipper assumes all the risk of damage he may sustain by reason of any delay in such transportation. Some cases are cited by the respondent which sustain this contention; but they are not founded on reason or justice, and we are therefore not inclined to follow them. It will be seen from this contract that this is in effect, if construed as it has been construed by the respondent, a contract relieving the shipper from its own acts of negligence, thereby running directly counter to the first clause in the contract, which reads as follows:

"The company shall not be liable for the loss or death of or injury to the stock unless the same is caused by the negligence of the company, its agents or employees."

So that it will be seen that this contract recognizes the general principle that the shipper has no right to relieve itself by contract against acts of negligence on its part. The reason we say that the provision relied upon by the appellant is in effect a provision where an attempt is made to contract against negligence, is that there would be no way, if this provision were literally construed, by which the shipper could show negligence, because he has made himself actually responsible for all damages which may be sustained by reason of any delay in the transportation. In this case, appellant was asked if he knew the cause of the delay, and when he undertook to state what the train men told him, was prevented from so stating, and if this was a correct holding— a question upon which we do not pass—it shows the absolute injustice of the rule. For how can a man who has no knowledge of railroading, no way of ascertaining the manner in

which the business is conducted by the company, or of compelling the confidence of the management, tell the cause of the delay? It is true that in this instance the shipper accompanied the horses, but railroad companies do not usually establish their bureaus of information either in a horse car or a caboose, the only apartments in the train which were available to the shipper. A car may be sidetracked and delayed for an hour, or for twenty-four hours, by order of the train dispatcher or some one in authority hundreds of miles away, for a necessity which is apparent to him; and that necessity may have been brought about by negligence in the intricate management of the business by some responsible agent of the company a long distance from the location of the train which is sidetracked. There certainly can be no semblance of justice in relieving the party from making a disclosure who is in a position to make it, or in making an explanation which will excuse it if there be such an explanation available to him.

This court and other courts have frequently said that, where it is necessary to make a character of proof which, by reason of the circumstances surrounding the case, is exclusively within the knowledge of one or the other of the parties, the burden would be upon the party possessed of that knowledge to make the proof; and that is exactly the case here. This rule, which it is admitted by the respondent applies under the ordinary contracts, was no doubt based upon the reasons which we have just assigned. The reason for the rule has not in the least been changed by the modification in the contract, for the cause of the delay is just as difficult to prove, and just as much without the knowledge of the shipper and within the knowledge of the carrier, as it was under the regular contract. The fact that risks are assumed by the shipper which were not assumed under some other contract, can in no way affect the rule or the reason for it.

The court was also of the opinion that the proof of damages was not sufficiently definite to enable the jury to determine the amount thereof. But while the proof of damages

in many respects was somewhat cloudy, there certainly was testimony to the effect that, by this unusual delay, an unusual amount of shrinkage of all the horses would occur, and that they would have to be kept a longer time before they could be sold, and the testimony was definite and certain that all the horses had to be fed and cared for this extra length of time, and that it actually cost the respondent at the rate of $15 a month for such extra care and keep.

The judgment will be reversed, and a new trial granted.

RUDKIN, C. J., FULLERTON, CROW, MOUNT, and GOSE, JJ., concur.

CHADWICK, J., concurs in the result.

PARKER and MORRIS, JJ., took no part.