(72 South. 705)

No. 20537.

HOGG v. KANSAS CITY, S. & G. RY. CO.

(June 30, 1916. Rehearing Denied Oct. 16, 1916.)

*(Syllabus by Editorial Staff.)*

1. CARRIERS ⟶331(5)—CARRIERS OF PASSENGERS—CONTRIBUTORY NEGLIGENCE—RIDING ON STEPS.

Even if the train on which he was riding was the last one upon which he could have made his excursion ticket good, it was negligence for a passenger to expose himself to the dangers incident to riding on the steps of the coach, unless his doing so was absolutely unavoidable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1379; Dec. Dig. ⟶331(5).]

2. CARRIERS ⬯346(2)—CARRIERS OF PASSEN-GERS—CONTRIBUTORY NEGLIGENCE—RIDING ON STEPS—EVIDENCE.

Evidence *held* insufficient to show that a train on which decedent was riding was so crowded as to make absolutely unavoidable his riding on the steps, and absolve him from contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. ⬯346(2).]

3. EVIDENCE ⬯20(2) — JUDICIAL NOTICE — OPERATION OF TRAINS.

It is a matter of common knowledge of which the courts ought to take judicial notice that more or less of an oscillating or jerking motion is necessarily incident to running trains.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. ⬯20(2).]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Mrs. Minnie Hogg, tutrix, against the Kansas City, Shreveport & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Judgment set aside, and suit dismissed.

Alexander & Wilkinson, of Shreveport, for appellant. G. H. Holder and Hall & Jack, all of Shreveport, for appellee.

PROVOSTY, J. This suit is by the widow and minor children of Claud Hogg, in damages for his sufferings and death. He and a large number of other excursionists who had come to Shreveport to attend a fair boarded a train of the defendant company after dark on their way home. The crowd being too large for the train, a coach was added. Hogg was standing on the steps of the platform of one of the coaches when a jerk occurred which caused him to fall off. This happened a few hundred yards from the station, while the train was still within the yard of the defendant company, but whether when the additional coach was coupled, or when, after having finally started on its way and slowed down for the first street crossing the train resumed its speed is not made clear; but is unimportant from the view we have taken of the case. A few minutes after Hogg had fallen, the crew of a train which was following on the same track found him lying on the ground by the side of the track, with both his legs crushed. He died of these injuries in a few days.

One of the defenses is that of contributory negligence, founded upon the fact of riding on the steps of the coach.

[1, 2] We are very clear that even if this train was the last by which the young man might have made his excursion ticket good that day—a fact not proven—it was negligence on his part to expose himself to the danger incident to riding on the steps of the coach, instead of inside, or, at any rate, on the platform, unless his doing so was absolutely unavoidable. Elliott on Railroads (2d Ed.) vol. 4, p. 517, § 1630. And we conclude from the facts that it was not unavoidable. While some witnesses testify that the train was so crowded that going inside was not possible without elbowing and pushing one's way in, others testify to facts which show the contrary. Thus, Alec Wall, the witness who testified most strongly to the crowded condition of the coach and platform, testified as follows:

"Well, I worked myself to the front of the vestibule and laid my hand on the edge or side of the door and looked through the space between two men, and I seen Hogg's face—saw him on the steps, and then I *immediately* walked back to my place where I had been standing, as I was a little afraid some one might push me down, and I got back where I was standing and held on."

If this witness could, merely out of curiosity, change his position on the platform in that manner, the crowding could not have been so very great but that Hogg could have secured standing room. Plaintiff's other witness, Davis, speaks of having gone out on the platform after having been in and unable to get a seat. T. W. Wall, another of plaintiff's witnesses to the crowded condition of the train, said that he and Hogg—

"were standing there waiting for them to open the doors so we could get on. Q. Did he get inside the coach—you were ahead of Mr. Hogg?

A. Yes, sir. Q. Did you get inside the coach? A. Yes, sir. Q. How far inside? A. Well, I was not—when I first got on, I looked through the smoker for a seat, and could not find any."

Again he testified:

"Now was he standing or sitting on the steps, Mr. Wall? A. Well, he had been sitting after he got on, had been sitting down by the door inside of the car, but he got up on his feet."

Plaintiff's witness, Thomason, who "got on a little behind the general crowd," and "hardly ever tries to push," did not find a seat, but stood "in the aisle on the inside." Plaintiff's witness, Mrs. Bain, saw Hogg "right by the door of the vestibule" as she "went in the door." She and the little girl with her found vacant seats. J. E. Hooper, another of plaintiff's witnesses, was "among the first to get on," and got a seat. He says there "was hardly standing room" in the coach after the train started. Mrs. G. Healdt, a witness for defendant, testified that, accompanied by a young lady and a child, she got on the train "just as it was ready to leave." That after she got in the coach the conductor told her to come on, and he would get her a seat, and that she followed him, and he got seats for her and the young lady. "Q. Now, was any one in the seat that you got? No, sir; it was vacant when I got in there." That she did not notice whether there were any persons standing in the coach. That as she went from one of the chair cars to the other, she saw Hogg "standing on the platform between the two coaches. Not on the steps." The conductor testified that there was standing room for all the passengers inside of the coaches. The brakeman testified that as he went through the cars there was standing room for more passengers. R. H. Browning, witness for defendant, testified:

"Q. Did you see Mr. Hogg at the depot? A. Yes sir. Q. Where? A. Standing at the plat-form, waiting a chance to get on the train. ·Q. Was he ahead of you or behind you? A. He walked past me. Q. As you were getting on? A. Yes, sir. He went further up towards the front end of the train."

Browning got a seat. We think this evidence shows that Hogg was among those who stood ready to get on the train as soon as they could, and that he not only could have secured standing room inside, but did do so, and afterwards went to the platform, and from there to the steps. The fact is, it is our belief from the evidence that if Hogg had walked through the train in search of a seat when he first got on, he would probably have found one. Whether he was bound to do this, and had not the right to assume that the train was as much crowded throughout as in the part where he was, is a question not needing to be decided. We are perfectly satisfied from the evidence that he could have secured standing room inside; and this suffices for disposing of the case.

[3] It may be well to mention that while some of the witnesses testify to the jerk or jolt of the train having been beyond the ordinary, others did not notice it at the time, or did not remember it. The road and the equipment were in good order, and there was no occasion for anything unusual to happen, except, perhaps, that the train was somewhat heavier and the grade upward. "It is a matter of common knowledge, of which we think the courts ought to take judicial notice, that more or less of an oscillating or jerking motion is necessarily incident to running trains." Elliott on Railroads, vol. 4, p. 552, § 1630a. Whatever jerk there was, the decedent alone suffered from it, and as the result solely of his having been in the perilous position on the steps.

The judgment appealed from is set aside, and the suit dismissed, at the cost of plaintiff.