(93 South. 655)

**PAYNE, Agent, v. CRAWFORD.** (6 Div. 459.)

(Supreme Court of Alabama. June 8, 1922.
Rehearing Denied June 30, 1922.)

**1. Master and servant ⟨Key⟩286(30)—Evidence on question of negligent jerking of train held insufficient for jury.**

The mere fact that intestate fell between the cars by reason of a sudden jerking of the train, affirmatively shown by all the witnesses to be the usual and ordinary jerking of a moving freight train, does not permit any reasonable inference that the train was negligently operated, and such showing requires an affirmative charge for defendant.

**2. Appeal and error ⟨Key⟩695(1)—That gestures illustrating jerking of freight train are not shown in bill of exceptions does not affect understanding of testimony.**

That the bill of exceptions does not contain the gestures of a witness illustrating the jerking of a freight train, does not impair a full understanding of the testimony by the Supreme Court as everybody understands the jerking of a freight train, and gestures can add nothing to a verbal description of its movements.

Thomas, McClellan, and Miller, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action for damages for wrongful death by Willie S. Crawford, as administratrix of the estate of Harry F. Crawford, deceased, against John Barton Payne, Director General of Railroads. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellant.

There being no evidence to show negligent operation of the engine causing the accident, the general affirmative charge should have been given. 206 Ala. 320, 89 South. 509; 205 Ala. 609, 89 South. 70, 97 Ala. 165, 11 South. 886; 129 Ala. 553, 30 South. 571; 181 Iowa, 845, 165 N. W. 105, L. R. A. 1918B, 369.

Burgin & Jenkins, of Birmingham, for appellee.

Where there is a scintilla of evidence to support plaintiff's right to recover, the affirmative charge should not be given for defendant. 201 Ala. 261, 77 South. 677; 202 Ala. 681, 81 South. 637; 196 Ala. 146, 72 South. 80. Where there is conflict between evidence given by a witness on direct and cross examination, it is for the jury to say which is to be believed. 202 Ala. 344, 80 South. 426; 201 Ala. 336, 77 South. 998. When the bill of exceptions shows that material matters, not presented to the Supreme Court, were before the jury, the Su-

preme Court will not review the refusal of the general affirmative charge. 196 Ala. 136, 72 South. 68; 189 Ala. 590, 66 South. 589; 185 Ala. 603, 64 South. 361. Evidence that plaintiff's intestate was knocked off or fell off the train as a consequence of a jar or jerk was of itself some evidence that the jar or jerk was unusually and negligently severe, and sufficient to carry the case to the jury. 97 Ala. 165, 11 South. 887; 120 Ala. 535, 24 South. 955; 205 Ala. 609, 89 South. 70.

SOMERVILLE, J. As stated in the dissenting opinion of Mr. Justice Thomas, the testimony of plaintiff's witness Cunningham is to the effect that intestate, while walking on top of a box car, was thrown between two cars by the sudden jerking of the train, while it was backing slowly downgrade. There is no other evidence in the record which tends to show that the train gave a sudden jerk at the time of plaintiff's fall; and this witness testified on cross-examination that the train—

"was jerking as it was moving along, jerking like any other freight train jerks. * * * They all jerk as they move along, and that one was *just rattling and jerking like any other freight train*. When I got there it was doing that; I didn't see another sudden jerk; when I got to the window it was moving, and it gave this jerk."

The undisputed evidence shows that the intestate did not fall from the car as the result of any jerk or jar imparted to it by the starting of the train, for the only two eyewitnesses—who testified for plaintiff—stated that at the time of intestate's fall the train had already been put in motion and was moving slowly down the grade. We are therefore, not concerned with the means by which, or the manner in which, the engineer set his train in motion, though it may be observed that all the evidence affirmatively shows that it was done in a proper way, and with no unusual or unnecessary violence. The sole question presented is, whether the mere fact that the intestate fell, or was thrown, between the cars by reason of a sudden jerking of the train—the jerking not shown to be violent, but affirmatively shown to be the usual and ordinary jerking of a freight train while in motion—permits any reasonable inference that the train was negligently operated.

This court has frequently had occasion to declare its judicial knowledge of the fact that more or less violent jerks and jars are necessarily incident to the starting and stopping of trains operated by steam locomotives. St. L. & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 South. 70, and cases cited therein. And in those cases it is held that the employé does not assume the risk of sudden un-

---

⟨Key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

necessary movements, even though of no more than ordinary violence, which are caused by the negligence of the engineer in the handling of the train.

In Birmingham, etc., R. Co. v. Wilmer, 97 Ala. 165, 168, 11 South. 886, 887, it was said:

"Jerking with some degree of violence may therefore be said to be generally necessary and incident to the starting of such trains, and the fact that it occurs in a given instance with that degree of violence which is usual under the particular circumstances as to grade, character of cars, and the like is no evidence of negligence in setting the train in motion."

The cases referred to and reviewed in Dorman's Case, supra, are concerned with jerks and jars in the starting and stopping of trains, and, therefore, the rules of law therein applied are not strictly applicable to the circumstances of the instant case, involving merely the usual and ordinary jerking of a freight train while in motion. Hence the observation made in Birmingham, etc., R. Co. v. Wilmer, supra, quoted in the minority opinion, that the fact that a train was jerked into motion "with such force and suddenness as to hurl employés from the top of it," was itself some evidence for the jury that the jerk was unusually and negligently severe, is not pertinent here, even if soundly applied to the facts of that case.

Here, as already shown, there is no evidence of any violent jerks or jars, and the mere fact that there was a jerk which caused him to lose his balance and fall between the cars, while walking along without support, cannot justify the inference that the jerk was unnecessarily severe and negligent, especially in the face of the affirmative testimony of all the witnesses, including plaintiff's that the jerking, as far as there there was any, was no more than is usual in the operation of all freight trains after they are put in motion, and therefore of the sort which no care on the part of the engineer could prevent.

[1] We think that the evidence fails to show, either directly or by any legitimate inference, that there was any negligence in the operation of the train, and that the trial judge erred in refusing to give for defendant the general affirmative charge, as requested. Our view is that there is no material conflict in the evidence on the question of the negligent jerking of the train, vel non; and, in particular, answering a contention of appellee's counsel, there is no such conflict in the testimony of the witness Cunningham, which, taken as a whole, simply fails to support the necessary inference of negligence in the operation of the train.

[2] Another contention urged in negation of the propriety of the general affirmative charge for defendant is that the bill of exceptions shows that the witness Cunningham illustrated the jerking of the train by some gestures made with her hands; and that since these gestures are not and could not be shown by the bill of exceptions, the appellate court cannot pass upon the sufficiency of the whole evidence as it was presented to the trial court.

We are of the opinion, however, that, from the nature of the thing described, as well as from the spoken language which the gestures accompanied, the gestures were not of material importance to an understanding of the meaning and effect of the witness' testimony; and that our full understanding of it is in no wise impaired by our inability to observe the dramatic feature noted in the bill of exceptions. Everybody understands the jerking of a freight train, and gestures can add nothing to a verbal description of its movements.

For the error noted, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

McCLELLAN, THOMAS, and MILLER, JJ., dissent.

THOMAS, J. (dissenting). The plaintiff in the court below, suing as administratrix of the estate of her deceased husband, recovered a judgment against John Barton Payne, the federal Agent, liquidating causes of action arising out of federal control of the St. Louis & San Francisco Railroad, on the 30th day of November, 1920, for the death of Harry F. Crawford, who was a switchman employed and at his post of duty in the operation of said railroad on the occasion and at the time of his death.

Mr. Crawford came to his death by being precipitated or falling from the top of a freight car, a part of a moving train, while he was walking or standing thereon in the discharge of the duties of his employment. None of the train crew saw him fall or was a witness to the accident. The engineer testified that the train had stalled going up hill, and that he had received a "clear board," that is, a block signal operated from a tower, and also a signal from the switchmen Lane and Crawford that he could back the train down the hill, and that thereupon he reversed his engine, released the brakes from the engine, and applied two or three exhausts of steam as he started back, and his train was proceeding down hill when the car on which Crawford was riding went out of sight around a curve and behind houses.

The trial court gave the general affirmative charge as to the several counts of the complaint except the first, which, in substance, was that Crawford, at the time of his death, was employed as a switchman by defendant, and while engaged in the performance of his duties and on top of one of the cars of said train "he was then and

there thrown or caused to fall therefrom, and was injured so that he died;" that his injuries and death were caused by reason of the negligence of L. E. Crump, engineer, who "had charge of or control of said locomotive," engine, car, or train upon said railway, which said negligence consisted in this: "The said L. E. Crump negligently caused plaintiff's intestate to be thrown or fall from said car as aforesaid." Defendant plead in short by consent the general issue, with leave to give in evidence any matter in defense which would be admissible if well pleaded. Unless there was evidence of negligence on the part of the engineer, proximately causing Crawford to be thrown or to fall from the car, defendant was entitled to the general affirmative charge which the court refused on defendant's request in writing.

As to when the affirmative charge should be given or refused has been the subject of frequent discussion by the courts, and it will not be necessary to repeat the same. Many authorities are collected in McMillan v. Aiken, 205 Ala. 35, 88 South. 135; Penticost v. Massey, 201 Ala. 261, 77 South. 675; Id., 202 Ala. 681, 81 South. 637; Id., 206 Ala. 411, 90 South. 866; Ward v. Limblad, 196 Ala. 146, 72 South. 80. The fact that there is conflict or an apparent conflict, between the evidence given by a witness on direct and cross examination will not warrant the court in disregarding the testimony of such witness; such contradiction being merely a matter affecting credibility, and is for the jury. Jones v. Bell, 201 Ala. 336, 77 South. 998; Republic I. & S. Co. v. Harris, 202 Ala. 344, 80 South. 426; Thomas Furnace Co. v. Carroll, 204 Ala. 263, 85 South. 455.

In Atlantic Coast Line v. Carroll Merc. Co., 206 Ala. 320, 89 South. 509, discussing the evidence, it was said that there was no inference that the injured animals received their injuries by reason of negligence—

"on the part of the carrier. The suggestion that the animals looked like they had been 'knocked down in the car' by a heavy jerk * * * is too vague to be of value. * * * There is no evidence of such a jerk, and, if there were there is nothing to show that it was due to negligence in the operation of the train. We judicially know *. * * that freight trains cannot be operated without frequent jerks and jars, and proof thereof is not alone sufficient to establish negligence. St. L., etc., R. R. Co. v. Dorman, 89 South. 70."

In the instant case the testimony of the witness Cunningham was to the effect that plaintiff's intestate was sitting on the car box of the moving train, got up and threw his coat under his arm, and—

"walked west, and the train, it seemed to be stalled and gave a jerk like that [gesturing] two or three times. Well, it was the train jerking that knocked him down between the two car boxes. * * * I saw him when the train knocked him down between the car boxes with a sudden jerk."

On cross-examination this witness stated that she had seen the train standing there for five or ten minutes before the accident; that it was "keeping up lots of fuss"; that the train was backing down towards the packing house; that when she first saw it, "just the wheels were moving"; that when she "first saw Mr. Crawford, he was getting up from sitting between the car boxes," and was moving when he fell at the end of the car box; that from where witness was standing in the house she could see the engine and Mr. Crawford when he fell. It is true the witness concluded her cross-examination with the observation that the train "was jerking as it was moving along, * * * like any other freight train jerks;" that when she got to the window, it was "moving and it gave this jerk."

Witness McBride testified:

"I was throwing out ashes and the train gave * * * an unusual noise, as if it was stopping, or starting, and I looked up and Mr. Crawford was nearly to the end of the car, and he went to step, * * * his feet slipped it seemed like, and he went between the cars"

—that a man was sitting on the last car with his back to Mr. Crawford, and it seemed like Mr. Crawford was going toward the other man at the time witness "heard the sudden noise" and saw Mr. Crawford "fall between the cars." The testimony further tended to show that defendant's engineer knew of Crawford's presence on the train, saw him when the signal for backing the train was given, was looking back toward the rear end of the train, and continued to look back and could see Mr. Crawford until he "got around about 19 or 20 cars from the accident"; that witness did not see him again; that Mr. Crawford was standing on the rear end of the train—his "proper position on that train" when last seen, and this was about the point where the car was stained with blood.

No motion for a new trial was made in the lower court; hence the question of preponderance of evidence is not presented. If there is a tendency or inference of evidence before the jury to support the right of plaintiff to recover, it is the duty of the trial court to refuse general affirmative instruction. Penticost v. Massey (the several appeals) supra; McMillan v. Aiken, supra.

Counsel rely strongly in argument upon St. L. & S. F. R. R. v. Dorman, 205 Ala. 609, 89 South. 70, to support their contention that the evidence failed to prove the negligence charged in the complaint against the engineer. In that case the facts showed without dispute that the deceased employé was not at his position of duty, was at a place where the engineer could not see him, and had no

reason to believe he was in a position of peril. In the instant case the evidence is without dispute that intestate was at his position of duty on top of a car composing the train, and that the engineer knew of his position, having seen and received a signal from Mr. Crawford a few minutes before his death.

Though the engineer testified that he continued to look back toward the rear of the train at all times before and after the accident, he further stated he could not see Crawford after the rear of the train had gone around the curve. The witness Cunningham, however, testified that from her house alongside the track she saw Crawford when he was jerked from the train and at the same time saw the engineer. A further tendency of the evidence, or inference therefrom, shows that it was raining at the time, and that the engineer, knowing the position of Crawford in the discharge of his duty under such circumstances, knew that it was of more than ordinary danger and called for increased care on the engineer's part in the backward movement of the train. In view of the train stalling as it proceeded upgrade, the jury may have inferred that a release of the brakes would permit it to run downgrade, and that it was unnecessary under the circumstances to have applied the steam two or three times to start the train, or to cause or permit any unusual or sudden jerk in its backward movement.

In Birmingham, etc., Co. v. Wilmer, 97 Ala. 165, 11 South. 886, Mr. Justice McClellan made pertinent observation that it was not disputed that plaintiff was knocked or fell off the train in consequence of a hard jerk; that this—

"was itself some evidence for the jury that the jerk was unusually and negligently severe. It surely cannot be said to be usual or necessary to jerk a train into motion under any circumstances with such force and suddenness as to hurl employees from the top of it while they, as the jury might have found plaintiff to be, are ordinarily careful and diligent."

The evidence tending to show due care on the part of the engineer in the movement of the train goes only to show that that movement was not unusually severe at the extreme rear of the train. Yet this might well be true, and still the application of the steam two or three times at the start and on releasing the brakes might be found by the jury to have exceeded the necessity to back a train downgrade, that had stalled upgrade, and held extended by its own weight and gravity, and that it would have backed down hill without any unnecessary or unusual application of the steam. A train thus suspended which, on the application of steam two or three times by the engineer, may have, in addition to weight and gravity, communicated unusual power to the successive cars, including that on which plaintiff's intestate stood at the time of his fall or precipitation between the cars, resulting in his death—such at least is a reasonable inference that may have been drawn by the jury from a consideration of all the evidence.

We are of opinion that a jury question was presented and that the general affirmative charge requested by the defendant, in writing, was properly refused.

McCLELLAN and MILLER, JJ., concur in the foregoing.