(No. 4777.   December 16, 1927.)

## J. W. COOPER, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[262 Pac. 873.]

CARRIER OF LIVESTOCK—NEGLIGENCE—LIABILITY—EVIDENCE—RIGHT TO JURY — QUESTION FOR COURT — PROXIMATE CAUSE — APPEAL AND ERROR—REVERSAL—VERDICT—MOTION FOR DIRECTED VERDICT—NEW TRIAL — HABITS OF ANIMALS—JERKING OF RAILROAD CARS—JUDICIAL NOTICE — STOCK ACCOMPANIED BY CARETAKER — BURDEN OF PROOF.

1. Right of party to have jury pass upon question of liability is fixed and absolute one, where circumstances are in dispute and evidence conflicting or when proof discloses such state of facts that in attempting to fix responsibility for injury different minds may honestly arrive at different conclusions.

2. Where there is substantial evidence to support verdict it must not be disturbed on appeal.

3. Question of carrier's negligence in transporting livestock could be passed upon by court only if there was no evidence to warrant verdict for plaintiff shipper.

4. A motion for a directed verdict ought to be granted when plaintiff has shown nothing to establish his claim of carrier's negligence in transporting livestock.

5. Mere conjecture and speculation cannot be indulged in to establish negligence of carrier in transporting livestock.

6. Court can take judicial notice of habits and propensities of animals.

7. It is a matter of common knowledge that horses strange to each other frequently fight when brought into close contact.

8. When shipper or his caretaker accompanies a shipment of livestock under contract to care for them en route, burden of proving negligence resulting thereto rests upon him.

9. A carrier is not liable for injuries resulting to animals from their natural propensities nor from attacks from other animals in same car.

10. Where shipment of animals is made accompanied by caretaker, proof of injuries to such livestock is not alone sufficient to establish negligence.

11. In action for damages for injury to shipment of horses, where it did not appear that car containing horses was at any time

while at town where injuries occurred in position where shipper or his caretaker, accompanying shipment, could not and did not have it under observation, it was incumbent upon shipper to establish such fact before burden of proof shifted to carrier to show its lack of negligence.

12. In action for damages for injury to shipment of horses, plaintiff's statement that trainmen were switching and jamming car containing horses around was not sufficient to establish carrier's negligence, since a jerk of a freight train of itself is not evidence of negligence.

13. It is a matter of common knowledge, of which courts take judicial notice, that in ordinary handling of trains there is more or less jamming and jolting necessary, and this is not negligence *per se.*

14. To constitute "negligence" on part of carrier, jerking, jolting or jamming of freight-car must have been accomplished with unusual severity or violence and not have been ordinary train movements.

15. Court can pass on question of negligence as matter of law only when all reasonable men would construe facts in same way.

16. In action for damages for injury to shipment of horses accompanied by caretaker, evidence of carrier's negligence in handling car containing horses *held* insufficient to go to jury.

17. Where a party is entitled to have a verdict directed in his favor at close of evidence, and case is reversed on his appeal, a new trial will not be ordered.

---

**Publisher's Note.**

2. See 2 R. C. L. 194.

4. Liability of carriers for injuries to animals during transportation, see notes in 67 **Am. Dec.** 208; 12 **Am. Rep.** 500; 1 **Ann. Cas.** 158.

6. Judicial notice, see notes in 89 **Am. Dec.** 663; 124 **Am. St.** 22. See, also, 15 **R. C. L.** 1057, 1102.

8. See 4 **R. C. L.** 995.

9. Natural propensities of stock as relieving carrier's liability for loss or injury, see note in 130 **Am. St.** 438. See, also, 4 **R. C. L.** 959, 963.

10. Burden of proof of negligence on part of carrier of livestock, see notes in 15 **Ann. Cas.** 35; **Ann. Cas.** 1913E, 311; 17 **L. R. A.** 339. See, also, 4 **R. C. L.** 962, 995.

17. See 2 **R. C. L.** 285.

APPEAL from the District Court of the Eleventh Judicial District, for Minidoka County.   Hon. T. Bailey Lee, Judge.

Action for damages for injury to shipment of livestock. Judgment for plaintiff.   *Reversed and remanded.*

George H. Smith,   H. B. Thompson and J. H. McEvers, for Appellant.

Where negligence is the gravamen of the action, the burden of proving negligence is on the party asserting it, and this is especially true in an action growing out of a shipment of livestock where the plaintiff or his agents accompanied the shipment. (*Lane v. Oregon Short Line R. Co.*, 34 Ida. 37, 15 A. L. R. 197, 198 Pac. 671; *Crabill v. Oregon Short Line R. Co.*, 34 Ida. 251, 200 Pac. 121; *Barrett v. Van Pelt*, 268 U. S. 85, 45 Sup. Ct. 437, 69 L. ed. 857; *Southern Ry. Co. v. Prescott*, 240 U. S. 632, 640, 36 Sup. Ct. 469, 60 L. ed. 836; *Terre Haute & Indianapolis R. Co. v. Sherwood*, 132 Ind. 129, 32 Am. St. 239, 31 N. E. 781, 17 L. R. A. 339; *Hickey v. Chicago, B. & Q. R. R. Co.*, 174 Mo. App. 408, 160 S. W. 24.)

Mere proof of jerking or jamming is not proof of negligence. (*Payne v. Crawford*, 207 Ala. 698, 93 So. 655; sec. 2, Safety Appliance Act of Mar. 2, 1893, 27 Stats. at L. 531, 8 Fed. Stats. Ann. 1161; *Atlantic Coast Line R. Co. v. Carroll Mercantile Co.*, 206 Ala. 320, 89 So. 509; *Hogg v. Kansas City etc. R. Co.*, 139 La. 972, 72 So. 705; *Foley v. Boston & Maine R. R.*, 193 Mass. 332, 79 N. E. 765, 7 L. R. A., N. S., 1076; *Ottinger v. Detroit United Ry.*, 166 Mich. 106,

Publisher's Note.

See Appeal and Error, 4 C. J., sec. 2834, p. 853, n. 58; sec. 3226, p. 1189, n. 6.

Carriers, 10 C. J., sec. 104, p. 94, n. 26; sec. 149, p. 123, n. 40; sec. 583, p. 381, n. 38, p. 382, n. 47 New; sec. 600, p. 389, n. 87, 97; sec. 602, p. 392, n. 49.

Evidence, 23 C. J., sec. 1826, p. 69, n. 13; sec. 1978, p. 155, n. 39.
Negligence, 29 Cyc., p. 630, n. 47.
Trial, 38 Cyc., p. 1537, n. 45, p. 1540, n. 47.

Ann. Cas. 1912D, 578, 131 N. W. 528, 34 L. R. A., N. S., 225; *Wile v. Northern Pac. Ry. Co.*, 72 Wash. 82, 129 Pac. 889, L. R. A. 1916C, 355.)

Proof of injury is not proof of negligence. (*Atlantic Coast Line R. Co. v. Carroll Mercantile Co., supra; Beeler v. Atchison, T. & S. F. Ry. Co.*, 107 Kan. 522, 192 Pac. 741; *Yazoo & M. V. R. Co. v. Cox* (Miss.), 40 So. 547; *Lewis v. Pennsylvania R. Co.*, 70 N. J. L. 132, 1 Ann. Cas. 156, 56 Atl. 128; *Southern R. Co. v. Moore*, 108 Va. 388, 61 S. E. 747; *State v. Widman*, 112 Miss. 1, 72 So. 782.)

Negligence is not actionable unless shown to be the proximate cause of the injury. (*Southern Ry. Co. v. Crawford,* 164 Ala. 178, 51 So. 340; *St. Louis & S. F. R. Co. v. Dorman,* 205 Ala. 609, 89 So. 70; *Carlock v. Denver & R. G. R. Co.,* 55 Colo. 146, 133 Pac. 1103; *Miner v. McNamara,* 81 Conn. 690, 72 Atl. 138, 21 L. R. A., N. S., 477; *Jackson v. Old Dominion Min. Co.,* 151 Mo. App. 640, 132 S. W. 306.)

A verdict based upon surmise and speculation will not stand. (*Antler v. Cox*, 27 Ida. 517, 149 Pac. 731; *Webber v. Bank of Tracy,* 66 Cal. App. 29, 225 Pac. 41; *Brown v. Union Pac. R. Co.*, 81 Kan. 701, 106 Pac. 1001, 29 L. R. A., N. S., 808; *Beeler v. Atchison, T. & S. F. Ry. Co., supra; Louisville & N. R. Co. v. Cook,* 183 Ky. 773, 210 S. W. 661; *Sandanger v. Carlisle Packing Co.,* 112 Wash. 480, 192 Pac. 1005.)

A contract of carriage, exempting the carrier from liability for damages caused by the inherent weaknesses, viciousness and propensities of the animals, is valid. (*Chaimson v. American Ry. Express Co.*, 178 Wis. 286, 189 N. W. 529; *Lane v. Oregon Short Line R. Co., supra; Crabill v. Oregon Short Line R. Co., supra;* 10 C. J. 121, 123; 4 Elliott on Railroads, sec. 3321, p. 827.)

Where the gravamen of the action is negligence and there is no proof of negligence, it is mandatory upon the court to direct a verdict for the defendant. (*Lane v. Oregon Short Line R. Co., supra; Crabill v. Oregon Short Line R. Co., supra; Beeler v. Atchison, T. & S. F. Ry. Co., supra.*)

"The burden is upon him who alleges negligence to prove it by substantial evidence (*Reino v. Montana Mineral Land Dev. Co.,* 38 Mont. 291, 99 Pac. 853; *Byrnes v. Butte Brewing Co.,* 44 Mont. 328, Ann. Cas. 1913B, 440, 119 Pac. 788), and this burden is not sustained if the evidence furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks negligence on the part of the defendant, while the other is wholly inconsistent with it, and points to some other efficient proximate cause." (*Scheytt v. Gallatin Valley Milling Co.,* 54 Mont. 565, 172 Pac. 321.)

W. W. Mattinson, for Respondent.

Negligence may be established by evidence wholly circumstantial. (*Calkins v. Blackwell Lumber Co.,* 23 Ida. 128, 143, 129 Pac. 435; *Botts v. St. Louis etc. R. Co.,* 191 Mo. App. 676, 177 S. W. 746; *Mosteller v. Iowa Central R. Co.,* 153 Iowa, 390, 133 N. W. 748; *Snyder v. King,* 199 Mich. 345, 1 A. L. R. 893, 165 N. W. 840; *Blackburn v. Adams Express Co.,* 230 Pa. 635, 79 Atl. 760; 20 R. C. L. 180.)

The character and extent of the injuries to the livestock are facts and circumstances from which inference of negligent operation of train may be made. (*Robinson v. Bush,* 199 Mo. App. 184, 200 S. W. 757; *Crow v. Bush* (Mo. App.), 200 S. W. 762.)

The evidence in this case justified a finding of negligence on the part of the carrier. (*Bartelt v. Oregon R. & Nav. Co.,* 57 Wash. 16, 135 Am. St. 959, 106 Pac. 487; *Schaeffer v. Philadelphia & Reading R. R. Co.,* 168 Pa. 209, 47 Am. St. 884, 31 Atl. 1088; *Blackburn v. Adams Express Co., supra; Snyder v. King, supra; Mosteller v. Iowa Cent. R. Co., supra.*)

If the facts are such that more than one reasonable conclusion or inference can be drawn from the circumstantial facts in evidence—one that negligence has been shown, and the other that negligence has not been shown—and the jury decide and determine that negligence has been shown, the action of the jury should not be disturbed. (*Calkins v.*

*Blackwell Lumber Co., supra; Fleenor v. Oregon Short Line R. R. Co.,* 16 Ida. 781, 803, 102 Pac. 897; *Katz v. T. I. Butler Co.,* 81 Cal. App. 747, 254 Pac. 679; *Snyder v. King; supra;* 20 R. C. L. 169–171.)

ADAIR, Commissioner.—This is an action sounding in tort to recover damages from appellant, a common carrier, for injuries sustained by horses included in a carload shipment. The dereliction charged is that the carrier so negligently operated its freight train that one horse was killed and seven others were injured while being transported over appellant's road. The particular negligence charged was that, in making up a freight train in the railroad yards at Pocatello, a division point, the employees of appellant company so negligently, carelessly and violently handled the train that the car of horses was jerked and jammed to such an extent, and such concussions were caused, that as a result the animals suffered certain specified injuries. The appellant joined issue upon the charge of negligence, and as an affirmative defense asserted that whatever damage or loss was sustained was proximately caused by and resulted from the respondent's own carelessness and negligence, and from the inherent and natural weakness, vice, viciousness and propensities of the animals themselves. This appeal is taken from a judgment based upon a verdict for the respondent shipper.

Appellant challenges the integrity of the judgment on the ground of the insufficiency or total lack of evidence, it being urged that the court erred in not granting its motion for a directed verdict. This succinctly states the only reason assigned for a reversal.

It will be necessary here to briefly mention the salient features of the evidence in order that the conclusions reached may be understood. Respondent, a stock buyer, delivered to appellant at Rupert 24 head of horses for transportation to Los Angeles, California. Many of these horses had been purchased from different individuals, and they were then assembled with others respondent had pre-

viously owned, and there loaded in one stock-car. While in the stockyards, one horse, named "Dutch," was fighting the others, and some trouble was encountered in loading these horses. A caretaker employed by respondent accompanied the shipment when it left the shipping point. He inspected the horses upon the arrival of the train at Minidoka and found them to be in good condition. In about an hour he returned to look again at the animals, and then observed a board broken in the car, and two of the horses down on the floor. Respondent, who arrived later on a passenger train, was notified that they were having trouble with the shipment, and this car was then taken to the stockyards, where the animals were unloaded. It was noticed that some of the horses were injured or scratched, but the exact extent of those injuries was not ascertained in the dark.

From Minidoka to Pocatello, both the owner and caretaker accompanied the shipment, riding in the caboose while the horses were carried in the car at the head of a train consisting of 75 cars. The train came to rest in the switchyards of appellant at Pocatello about daybreak. The engine was detached from the train, and a blue flag was immediately placed on the train, denoting to appellant's switchman that the train was in the hands of car men for inspection or necessary repairs, and was not to be moved or any car taken therefrom while the flag was so displayed. There was no rough handling of the train prior to its arrival in Pocatello, and no negligence is charged prior to that time.

Immediately upon arrival there the respondent and his employee both inspected the horses, and found them to be standing quietly, all up and in good condition. These men then left this car, seeking information as to when their train would depart. They were away from the car and off from the train until after 8 o'clock A. M., but were in the yard office or railroad yards during all that time, and in the near vicinity of this particular car. At about 8:20 one of appellant's switching crews, as its first move that morning, went to take this car to a south-bound train, on which it was

to have been transported to Ogden. The blue flag was still on the train to which this car was attached. Before coupling on to the car, the crew noticed that one horse was almost dead and others were down. They moved the car from the train on which it arrived, over to another track preparatory to attaching it to the new train on which it was destined to leave. This crew testified positively that there was no rough handling, jerking or jamming incident to moving said car.

Prior to this move, the condition of the horses had been observed and reported to the yardmaster, who later ordered the car taken to the stockyards and unloaded. One horse was dead, three others were down close to it, and several others had been wounded and injured more or less seriously. The dead horse was lying with its head toward the front, but close to the middle of the car.

The only testimony in the case relative to any alleged mishandling of the car in question was the following, given by the respondent himself:

"Q. State whether or not you noticed any cars coupled onto the car of horses. . . . .

"A. I did; they were switching, and there was from two to five or six cars coming in and going out.

"Q. In reference to the car of horses, Mr. Cooper, what did you see in connection with the making up of that train? . . . . With particular reference to the carload of horses, I want to know if you saw them there while you were in the yard office, and outside.

"A. They would back in, get a few other cars and take them away; then back in on another switch and get some more. When they pulled the horses, I expected them to go set them on a sidetrack, and they didn't. After that I didn't see them for a little while, and I did see them going to the yard office, and after I got to the yard office I see the car twice after that. It backed in, and come back again. After that I didn't see it any more until I found I had lost it—that's why I went in the yard office, to see what track it would be on, and I had my suitcase ready.

We tried to keep up with it—that's what we were doing out in the yards, but they were switching and jamming them around there, and— . . . .

"Q. Why do you say it was jammed around?

"A. Because of the sound of the train—the way it was coming together."

No testimony was offered to the effect that the jamming or handling of the cars was of unnecessary or unusual violence, the foregoing excerpts being the only statements whatsoever from which even an inference of negligence could be drawn, except the one other fact that the injury actually occurred to many of the animals, after they had earlier been found to be in good condition.

It is appellant's theory that these horses, strange to each other, must have commenced fighting in the car, after it stopped, as they had previously done at Minidoka; and that in the absence of evidence that the car was negligently handled, the court must conclude, as a matter of law, that the injuries received were due to the inherent viciousness or propensities of the animals, since such theory is as consistent with the evidence as that of negligence; and that the positive testimony of the train crews overcomes any inference of negligence on the part of appellant under such circumstances.

It is significant or peculiar that the evidence does not disclose many things which might assist in determining what actually caused these injuries; and in that respect the record is very unsatisfactory. It does not appear whether these horses were tied or loose in the car. It is not shown clearly just what the nature of the injuries was. The dead horse was in the center of the car some distance from either end. How it, in a crowded car, could receive a fatal blow by the shunting or jerking of the car frontward or backward, without coming in direct contact with the end of the car, is a matter of query. Manifestly, the car was not jolted much sidewise, and an animal, to be killed by the jamming of the car, of necessity must have been where its head was thrust against the end of the car. It is possible, of course, that the

dead animal may have been knocked down by the jolting of the train, and thereafter trampled upon or suffocated by its companions. No veterinary or other qualified witness examined the horses, or testified as to the character of their wounds; and yet, if kicked or injured by other animals, it would seem that there would have been physical evidence of hoof or teeth marks. If these horses had been fighting to any extent, someone would have been likely to have seen or heard them, in a railroad yard, frequented and occupied by many workmen. There is no evidence as to where this horse "Dutch" was located, or where the other injured horses were stationed in the car. From the meager evidence as to the character of the injuries, an inference might reasonably be indulged in that such hurts or damage to these animals were caused either by the improper handling of the car, or by fighting among themselves. One theory is as logical as the other, and there is no preponderance of probability favoring either of such theories.

[1–3] The right of a party to have a jury pass upon the question of liability is a fixed and absolute one where the circumstances are in dispute and the evidence conflicting, or when the proof discloses such a state of facts that, in attempting to fix responsibility for injury, different minds might honestly arrive at different conclusions. Negligence is seldom so established by direct and positive evidence that it can be take from the consideration of the jury and pronounced upon as a matter of law. If there is substantial evidence to support a verdict, it must not be disturbed on appeal. The question of negligence in this case could only be passed upon by the court if there was no evidence to warrant a verdict for the respondent. (*Fleenor v. Oregon Short Line R. Co.*, 16 Ida. 781, 102 Pac. 897; *Calkins v. Blackwell Lumber Co.*, 23 Ida. 128, 129 Pac. 435.)

[4] On the other hand, a motion for a directed verdict ought to be granted when plaintiff has shown nothing to establish his claim of negligence. (*Crabill v. Oregon Short Line R. Co.*, 34 Ida. 251, 200 Pac. 121; *Snyder v. King*, 199 Mich. 345, 1 A. L. R. 893, 165 N. W. 840.) In the

latter case, it was stated that a trial court can properly pass upon the question of negligence only in cases where the facts are such that all reasonable men would be likely to draw the same inference.

[5]   Mere conjecture and speculation cannot be indulged in to establish negligence.   See *Beeler v. Atchison, T. & S. F. Ry. Co.*, 107 Kan. 522, 192 Pac. 741, involving facts almost identical with those in the case at bar, to which case we shall hereafter advert.

[6, 7]   The court can take judicial notice of the habits and propensities of animals.   (*Atlantic Coast Line R. Co. v. Carroll Mercantile Co.*, 206 Ala. 320, 89 So. 509.)   It is a matter of common knowledge that horses, strange to each other, frequently fight when brought into close contact. They, when unused to railroad transportation, become restive, excited and frightened in such surroundings.   If these animals would fight in the car at Minidoka after the train came to rest, it is but natural to presume that within a few hours thereafter, when the train again stopped, they would or might renew their conflict.

[8]   When a shipper or his caretaker accompanies a shipment of livestock, under a contract to care for them en route, the burden of proving negligence resulting thereto rests upon him.   (*Lane v. Oregon Short Line R. Co.*, 34 Ida. 37, 15 A. L. R. 197, 198 Pac. 671; *Bartelt v. Oregon R. & N. Co.*, 57 Wash. 16, 135 Am. St. 959, 106 Pac. 487; *Terre Haute & Indianapolis R. Co. v. Sherwood*, 132 Ind. 129, 32 Am. St. 239, 31 N. E. 781, 17 L. R. A. 339; 4 R. C. L., p. 995, sec. 462.)

[9]   A carrier is not liable for injuries resulting to animals from their natural propensities, nor from attacks by other animals in the same car.   (*Robinson v. Bush*, 199 Mo. App. 184, 200 S. W. 757.)

[10]   Where a shipment of animals is made, accompanied by a caretaker, proof of injuries to such livestock is not alone sufficient to establish negligence.   (*Lewis v. Pennsylvania R. Co.*, 70 N. J. L. 132, 1 Ann. Cas. 156, 56 Atl. 128;

*Yazoo & M. V. R. Co. v. Cox* (Miss.), 40 So. 547; 4 R. C. L., p. 995, sec. 462.)

On the contrary, the burden of proof is upon the carrier to show the exercise of due care when a livestock shipment is unaccompanied by a caretaker, and arrives at its destination in an injured condition. The reason for this distinction is logical and apparent. If the shipper or his representative is present, such person can testify from personal observation as to the manner in which the train or car was handled. If absent, the shipper cannot furnish the necessary proof, and as a consequence a presumption of negligence arises, thereby casting the burden on the railroad company to negative such presumption. (*Jolliffe v. Northern Pac. R. Co.*, 52 Wash. 433, 100 Pac. 977.)

[11] From the record in the instant case, it does not appear that the car containing the horses was, at any time while at Pocatello, in a position where the respondent and his employee, or at least one of them, could not and did not have it under observation. It was incumbent upon respondent to establish such fact, before the burden of proof shifted to appellant to show its lack of negligence.

[12] The only evidence even hinting at negligence in the moving or handling of this car, aside from the physical evidence of injuries to the horses, was the statement of respondent above quoted, to the effect that "they were switching and jamming them around there." He did not purport to claim that this was done with any unnecessary or unusual force or violence. Either of these facts, or both combined, are not sufficient to establish the negligence alleged.

[13] A jerk of a freight train, of itself, is not evidence of negligence. (*Wile v. Northern Pac. Ry. Co.*, 72 Wash. 82, 129 Pac. 889, L. R. A. 1916C, 355; *Atlantic Coast Line R. Co. v. Carroll Mercantile Co., supra.*) It is a matter of common knowledge, of which the courts will take judicial notice, that in the ordinary handling of trains, there is more or less jamming and jolting necessary; and this is not negligence *per se.* (*Hogg v. Kansas City, S. & G. Ry. Co.*,

139 La. 972, 72 So. 705; *Foley v. Boston & M. R. R.,* 193 Mass. 332, 79 N. E. 765, 7 L. R. A., N. S., 1076; *Atlantic Coast Line R. Co. v. Carroll Mercantile Co., supra.*)

[14] To constitute negligence, the jerking, jolting or jamming of the car must have been accomplished with unusual severity or violence, and not have been the ordinary train movements. (*St. Louis & S. F. R. Co. v. Gosnell,* 23 Okl. 588, 101 Pac. 1126, 22 L. R. A., N. S., 892; *Wile v. Northern Pac. Ry. Co., supra; Boston Elevated R. Co. v. Smith,* 168 Fed. 628, 94 C. C. A. 84, 23 L. R. A., N. S., 890; *Birmingham Mineral R. Co. v. Wilmer,* 97 Ala. 165, 11 So. 886; *Payne v. Crawford,* 207 Ala. 698, 93 So. 655.)

In *Birmingham Mineral R. Co. v. Wilmer, supra,* it was said:

"Jerking with some degree of violence may therefore be said to be generally necessary and incident to the starting of such trains, and the fact that it occurs, in a given instance, with that degree of violence which is usual under the particular circumstances as to grade, character of cars, and the like, is no evidence of negligence in setting the train in motion."

A great many other cases might be cited on each of the propositions hereinbefore set forth in this opinion, but we have, for purposes of brevity, omitted such citations, and called attention to only a few which appeared to be well considered and as properly upholding the doctrine and principles herein stated.

[15] It is fundamental that the court can pass on the question of negligence, as a matter of law, only when all reasonable men would construe the facts in the same way. (*Snyder v. King, supra.*) This court has held, in an action for personal injuries, which may have been occasioned by one of two causes, for one of which the defendant would be liable, and for the other of which it would not, that the plaintiff must fail if his evidence does not show that the injuries were the result of the cause for which the defendant was responsible. (*Antler v. Cox,* 27 Ida. 517, 149 Pac. 731.)

In the case of *Beeler v. Atchison, T. & S. F. Ry. Co., supra,* the evidence showed that the horses seemed to be very excited, and that the loading was only accomplished with difficulty; that after the men who had loaded the car went away the horses seemed to be struggling and kicking, and this continued for some time. In that case, the syllabus reads:

"In an action against a carrier to recover for injuries to a shipment of colts and mares, it was alleged the injuries were caused by negligence of the defendant's employees who, in attempting to attach the car to the freight train, carelessly and negligently backed the engine against it with great speed, force, and violence, by which several of the animals were knocked down and killed and others maimed and injured. *Held,* that a motion to set aside a finding that the injuries to the animals were caused by negligence in making the coupling and starting the engine should have been sustained because it was unsupported by evidence."

[16] Under the facts in the instant case, no reasonable man can say what caused the injuries to these animals. There is the positive testimony of the employees of the appellant that no unnecessary violence attended the movements of the car, or the train of which it was a component part. We can eliminate entirely the supposition that the horses may have injured themselves, and still the evidence is wholly insufficient to sustain the verdict. As stated before, proof of the injury alone does not establish negligence; and nowhere in the record is there a word of proof to the effect that the jamming was unnecessarily or unusually severe or violent. Without proof of such fact, negligence is not established; and we must conclude that the only basis for the verdict rendered was mere conjecture. It follows that the court erred in denying appellant's motion for a directed verdict.

[17] This court has heretofore announced the rule that where a party is entitled to have a verdict directed in his

favor at the close of the evidence, and the case is reversed on his appeal, a new trial will not be ordered. (*Exchange State Bank v. Taber*, 26 Ida. 723, 145 Pac. 1090; *County of Ada v. Clark*, 43 Ida. 489, 253 Pac. 847.)

We recommend that the judgment be reversed and the cause remanded with directions to the trial court to enter judgment in favor of appellant and that costs be awarded to appellant.

Babcock and Featherstone, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment in favor of appellant. Costs to appellant.

Wm. E. Lee, C. J., Taylor, J., and Brinck, D. J., concur.

Budge and Givens, JJ., dissent.

T. Bailey Lee, J., disqualified.

Petition for rehearing denied.